AO 241 (Rev. 09/17)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District: MIDDLE DISTRICT OF FLORIDA |
|---|---|

| Name (under which you were convicted): DAVID MICHAEL LONG | Docket or Case No.: 2017-CF-3666 |
|---|---|

| Place of Confinement: SUWANEE C.I. ANNEX 5964 U.S. HWY 90 LIVE OAK, FL 32060 | Prisoner No.: 5:22-CV-56-PGB PRL D-20224 |
|---|---|

| Petitioner (include the name under which you were convicted) DAVID MICHAEL LONG | Respondent (authorized person having custody of petitioner) |
|---|---|
| v. | STATE OF FLORIDA |

| The Attorney General of the State of: FLORIDA |
|---|

CLERK, US DISTRICT COURT MIDDLE DISTRICT OF FL OCALA FLORIDA 2022 JAN 31 PM 2: 14 FILED

### PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   FIFTH JUDICIAL CIRCUIT OF FLORIDA, 110 NW 1ST AVENUE, OCALA, FLORIDA 34475

   (b) Criminal docket or case number (if you know): 2617-CF-3666

2. (a) Date of the judgment of conviction (if you know): 08/29/2019

   (b) Date of sentencing: 10/17/2019

3. Length of sentence: LIFE/50 YEAR MINIMUM

4. In this case, were you convicted on more than one count or of more than one crime?  ☐ Yes  ☒ No

5. Identify all crimes of which you were convicted and sentenced in this case:

   SEXUAL BATTERY INVOLVING THREATENED USE OF FORCE OR VIOLENCE WITH A FIREARM - POSS (FL): 794.011, 3

6. (a) What was your plea? (Check one)

   ☒ (1)  Not guilty          ☐ (3)  Nolo contendere (no contest)

   ☐ (2)  Guilty              ☐ (4)  Insanity plea

AO 241 (Rev. 09/17)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? _____

_____

_____

_____

_____

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

    ☒ Jury    ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

    ☒ Yes    ☐ No

8.    Did you appeal from the judgment of conviction?

    ☒ Yes    ☐ No

9.    If you did appeal, answer the following:

(a) Name of court:   FIFTH DISTRICT COURT OF APPEAL

(b) Docket or case number (if you know):   5D19-3264

(c) Result:   DENIED

(d) Date of result (if you know):   02/05/2021

(e) Citation to the case (if you know):   LONG v. STATE, 011221 FLCA5, 5D19-3264

(f) Grounds raised:   (1) THE SEARCH WARRANT FOR APPELLANT'S CELLPHONE WAS OVERBROAD AND LACKED PARTICULARITY IN FAILING TO IDENTIFY THE REMOTE ELECTRONIC STORAGE AS A PARTICULAR PLACE TO BE SEARCHED; THE EXECUTION OF THE SEARCH WARRANT WAS UNLAWFUL AND EXCEEDED THE SCOPE OF THE WARRANT; AND (2) THE TRIAL COURT ERRED IN ADMITTING WILLIAMS RULE EVIDENCE AND DENYING THE MOTION FOR A MISTRIAL

(g) Did you seek further review by a higher state court?    ☐ Yes  ☒ No

    If yes, answer the following:

    (1) Name of court: _____

    (2) Docket or case number (if you know): _____

    (3) Result: _____

AO 241 (Rev. 09/17)

(4) Date of result (if you know): ~~(illegible)~~

(5) Citation to the case (if you know): _____

(6) Grounds raised: _____

_____

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?  ☐ Yes  ☒ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?  ☒ Yes  ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a)  (1) Name of court: FIFTH JUDICIAL CIRCUIT OF FLORIDA

(2) Docket or case number (if you know): 2017-CF-3666

(3) Date of filing (if you know): 04/30/2021

(4) Nature of the proceeding: MOTION 3.850 FOR POST-CONVICTION RELIEF

(5) Grounds raised: (1) TRIAL COURT ERRED IN DENYING THE DEFENDANT'S

MOTION TO SUPPRESS; (2) TRIAL COURT ERRED IN ALLOWING WILLIAM'S

RULE EVIDENCE AND DENYING MOTION FOR MISTRIAL; (3) NEW EVIDENCE

THAT THE STATE SUBORNED PERJURED TESTIMONY; (4) NEW EVIDENCE

THAT THE VICTIM HAS A HISTORY OF MAKING FALSE ALLEGATIONS; (5)

→ (14) DEFENDANT CLAIMS HE WAS DENIED EFFECTIVE ASSISTANCE

OF COUNSEL; (15) DEFENDANT CLAIMS HE IS ENTITLED TO RELIEF

BASED ON THE CUMULATIVE EFFECT OF TRIAL COUNSEL'S ERRORS

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes  ☒ No

(7) Result: HEARING IS PENDING BUT NO DATE HAS BEEN SPECIFIED ON
GROUNDS 5 THROUGH 15; GROUNDS 1 THROUGH 4 WERE DENIED

AO 241 (Rev. 09/17)

(8) Date of result (if you know):     07/30/2021

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes     ☐ No

(7) Result:

(8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

AO 241 (Rev. 09/17)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☐ No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:   ☐ Yes   ☐ No

(2) Second petition:   ☐ Yes   ☐ No

(3) Third petition:   ☐ Yes   ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:**   THE TRIAL COURT VIOLATED THE DEFENDANT'S FOURTH AMENDMENT

RIGHTS WHEN IT ERRED IN DENYING HIS MOTION TO SUPPRESS...

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE ATTACHED

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground One, explain why:

_____

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

(c)     **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?     ☒ Yes   ☐ No

    (2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☒ Yes   ☐ No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition:   MOTION 3.850 FOR POST-CONVICTION RELIEF

    Name and location of the court where the motion or petition was filed:   FIFTH JUDICIAL CIRCUIT OF

    FLORIDA, 110 NW 1ST AVENUE, OCALA FLORIDA 34475

    Docket or case number (if you know):   2019-CF-3666

    Date of the court's decision:   07/30/2021

    Result (attach a copy of the court's opinion or order, if available):   PROCEDURALLY BARRED

_____

_____

    (3) Did you receive a hearing on your motion or petition?     ☐ Yes   ☒ No

    (4) Did you appeal from the denial of your motion or petition?     ☐ Yes   ☒ No

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☐ Yes   ☐ No

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: _____

_____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

    (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

    GROUND WAS DENIED BECAUSE IT WAS PROCEDURALLY BARRED

_____

_____

AO 241 (Rev. 09/17)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND TWO:**  THE TRIAL COURT ERRED IN VIOLATING THE DEFENDANT'S

FIFTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS BY ALLOWING . . .

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE ATTACHED

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)  **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☒ Yes    ☐ No

(2) If you did **not** raise this issue in your direct appeal, explain why:

(d)  **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    MOTION 3.850 FOR POST-CONVICTION RELIEF

Name and location of the court where the motion or petition was filed:    FIFTH JUDICIAL CIRCUIT

OF FLORIDA, 110 NW 1ST AVENUE, OCALA, FLORIDA 34475

Docket or case number (if you know):    2017-CF-3666

AO 241 (Rev. 09/17)

Date of the court's decision:  07/36/2021

Result (attach a copy of the court's opinion or order, if available):  PROCEDURALLY BARRED

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☒ No

(4) Did you appeal from the denial of your motion or petition?  ☐ Yes  ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☐ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

GROUND WAS DENIED BECAUSE IT WAS PROCEDURALLY BARRED

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two :

**GROUND THREE:**  BASED ON EVIDENCE DISCOVERED AFTER THE TRIAL, THE

DEFENDANT'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS...

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE ATTACHED

AO 241 (Rev. 09/17)

(b) If you did not exhaust your state remedies on Ground Three, explain why:

_____

_____

**(c)**    **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☒ No

(2) If you did not raise this issue in your direct appeal, explain why:    THIS GROUND WAS BASED ON

NEW EVIDENCE THAT WAS NOT KNOWN UNTIL AFTER THE DIRECT

APPEAL

**(d)**    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    MOTION 3.850 FOR POST-CONVICTION RELIEF

Name and location of the court where the motion or petition was filed:    FIFTH JUDICIAL CIRCUIT

OF FLORIDA, 110 NW 1ST AVENUE, OCALA, FLORIDA 34475

Docket or case number (if you know):    2017-CF-3666

Date of the court's decision:    07/30/2021

Result (attach a copy of the court's opinion or order, if available):    DENIED WITHOUT MERIT

_____

(3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☒ No

(4) Did you appeal from the denial of your motion or petition?    ☐ Yes    ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:    _____

_____

Docket or case number (if you know):    _____

Date of the court's decision:    _____

Result (attach a copy of the court's opinion or order, if available):    _____

_____

_____

_____

AO 241 (Rev. 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

GROUND WAS DENIED FoR BEING WITHOUT MERIT

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:**    NONE

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

AO 241 (Rev. 09/17)

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

| | | | |
|---|---|---|---|
| (3) Did you receive a hearing on your motion or petition? | ☐ Yes | ☐ No |
| (4) Did you appeal from the denial of your motion or petition? | ☐ Yes | ☐ No |
| (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? | ☐ Yes | ☐ No |

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

_____

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

13.   Please answer these additional questions about the petition you are filing:

   (a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court
          having jurisdiction?    ☒ Yes        ☐   No
          If your answer is "No," state which grounds have not been so presented and give your reason(s) for not
          presenting them: _____

          _____

          _____

          _____

   (b)    Is there any ground in this petition that has not been presented in some state or federal court? If so, which
          ground or grounds have not been presented, and state your reasons for not presenting them:

          _____

          _____

          _____

14.   Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction
      that you challenge in this petition?        ☐   Yes      ☒ No
      If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues
      raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy
      of any court opinion or order, if available. _____

      _____

      _____

      _____

      _____

      _____

      _____

      _____

15.   Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for
      the judgment you are challenging?        ☒   Yes      ☐   No
      If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues
      raised.    IN THE FIFTH JUDICIAL CIRCUIT OF FLORIDA, 110 NW 1ST AVENUE,

      OCALA, FL 34475 ON CASE NUMBER 2017-CF-3626 I AM WAITING

      ON AN EVIDENTIARY HEARING BASED ON GROUNDS RELATED TO INEFFECTIVE

      ASSISTANCE OF COUNSEL DERIVED FROM A MOTION 3.850 FOR POST-

      CONVICTION RELIEF, BUT NO DATE FOR THE HEARING HAS BEEN ASSIGNED

AO 241 (Rev. 09/17)

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:    PRO SE

(b) At arraignment and plea:    JACQUES WARD, OFFICE OF CRIMINAL CONFLICT AND CIVIL REGIONAL COUNSEL, 307 NW 3rd STREET, OCALA, FL 34475

(c) At trial:    ALISON KERESTES, P.O. BOX 2193, ORLANDO, FL 32802

(d) At sentencing:    ALISON KERESTES, P.O. BOX 2193, ORLANDO, FL 32802

(e) On appeal:    KEVIN HOLTZ, PUBLIC DEFENDERS OFFICE, 444 SEABREEZE BOULEVARD, SUITE 210, DAYTONA BEACH, FL 32118

(f) In any post-conviction proceeding:    PRO SE

(g) On appeal from any ruling against you in a post-conviction proceeding:    PRO SE

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        ☐ Yes    ☒ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?        ☐ Yes    ☐ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

AO 241 (Rev. 09/17)

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

    (1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

        (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

        (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241 (Rev. 09/17)

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: _____

_____

_____

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _____ (month, date, year).

Executed (signed) on _____ (date).

_____

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____

_____

_____

_____

GROUND #1: THE TRIAL COURT VIOLATED THE DEFENDANT'S FOURTH AMENDMENT RIGHTS WHEN IT ERRED IN DENYING HIS MOTION TO SUPPRESS VIDEO EVIDENCE LOCATED IN REMOTE STORAGE, OUTSIDE THE CELLPHONE SEARCHED. IN ADDITION, THE WARRANT WAS OVERBROAD AND THE SEARCH EXCEEDED THE SCOPE OF THE WARRANT...

THE LEGAL ARGUMENTS FOR THIS GROUND WERE THOROUGHLY COVERED IN THE DEFENDANT'S DIRECT APPEAL BRIEF, WHICH IS APPENDED TO THIS DOCUMENT AS EXHIBIT A. THE BASIS FOR THE DEFENDANT'S CHALLENGE ON THIS ISSUE IS THAT HIS FOURTH AMENDMENT RIGHT WERE VIOLATED WHEN LAW ENFORCEMENT SEARCHED THE CONTENTS OF THE DEFENDANT'S GOOGLE DRIVE ACCOUNT WITHOUT THE APPROPRIATE WARRANT.

THE DEFENDANT WAS ARRESTED ON 10/07/2017 ON DRUG CHARGES PURSUANT TO AN INVESTIGATION OF AN ACCIDENTAL DRUG OVERDOSE. PRIOR TO THE SEARCH WARRANT BEING ISSUED, LAW ENFORCEMENT LOCATED AND SEIZED A SAMSUNG GALAXY CELL-PHONE. AFTER THE DEFENDANT WAS INCARCERATED, A SEPERATE WARRANT FOR SAID CELLPHONE WAS EXECUTED ON 10/12/2017, WHICH SPECIFIED A SEARCH FOR VIDEO FILES LOCATED "ON OR IN" THE PHONE, AND WHICH DEPICTED DRUG, FIREARM, OR HOMICIDE-RELATED ACTIVITIES RECORDED ON OR ABOUT 10/05/2017.

LAW ENFORCEMENT PLACED THE CELLPHONE INTO AIRPLANE-MODE TO PREVENT CONNECTION TO A NETWORK, THEREBY ELIMINATING THE POSSIBILITY OF THE PHONE BEING DATA-WIPED REMOTELY. LAW ENFORCEMENT THEN ATTACHED A DEVICE TO THE CELLPHONE WHICH USED SOFTWARE TO EXTRACT AND COPY ALL THE DATA AND OTHER CONTENT FROM THE PHONE, DESPITE SAID PHONE BEING LOCKED WITH A PASSWORD. THIS EXTRACTION DID NOT YIELD ANY RELEVANT VIDEO-FILES OR OTHER EVIDENCE FROM THE CELLPHONE. THEN A DETECTIVE, WITHOUT SEEKING AN ADDITIONAL WARRANT, PERFORMED A MANUAL SEARCH BY TAKING THE PHONE OFF AIRPLANE-MODE AND ESTABLISHING AN INTERNET CONNECTION, THE DETECTIVE USED THIS CONNECTION TO OPEN A "GOOGLE DRIVE" APPLICATION IN ORDER TO ACCESS A "CLOUD"-BASED SERVICE THAT ALLOWS REMOTE STORAGE OF FILES ON GOOGLE SERVERS LOCATED AT DIFFERENT LOCATIONS AROUND THE WORLD. THE DETECTIVE THEN INSPECTED FILES STORED ON THE GOOGLE SERVERS AND DOWNLOADED TWO VIDEO FILES RELATED TO A SUSPECTED SEXUAL BATTERY) ONTO THE DEFENDANT'S CELLPHONE

THE DETECTIVE ALLEGED THAT HE DOWNLOADED THE TWO VIDEO FILES TO PREVENT THE FILES FROM BEING DELETED WERE THE CLOUD-ACCOUNT REMOTELY WIPED BY THE INCARCERATED

DEFENDANT, DESPITE THE DETECTIVE HAVING WAITED FIVE DAYS AFTER THE ARREST TO CONDUCT THE INITIAL SEARCH OF THE CELLPHONE, AND AN ADDITIONAL THIRTEEN DAYS BEFORE EVENTUALLY OBTAINING A WARRANT FOR THE GOOGLE-DRIVE ACCOUNT. THIS THIRD WARRANT WAS ISSUED ON 10/25/2017 FOR TWO GOOGLE-DRIVE ACCOUNTS, EVEN THOUGH LAW ENFORCEMENT NEVER ESTABLISHED THAT EITHER ACCOUNT BELONGED TO THE DEFENDANT.

THE FIRST SEARCH WARRANT FOR THE DEFENDANT'S CELLPHONE WAS SPECIFICALLY AUTHORIZED TO SEIZE VIDEO FILES OF THE DEFENDANT'S RESIDENCE EXCLUSIVELY RELATED TO CRIMES INVOLVING DRUGS, FIREARMS, OR HOMICIDE, AND THAT WERE RECORDED ON OR ABOUT THE TIME PERIOD BETWEEN 10/04/2017 AND 10/07/2017. THE WARRANT WAS OVERLY BROAD TO PERMIT A GENERAL WARRANT WITHOUT SUFFICIENT LIMITATIONS OR GUIDANCE TO THE POLICE, AND LACKED PARTICULARITY IN FAILING TO IDENTIFY THE REMOTE STORAGE SERVERS AS A PARTICULAR TO BE SEARCHED. THE WARRANT SOLELY PERMITTED A SEARCH FOR FILES LOCATED "ON OR IN" THE DEFENDANT'S CELLPHONE (SEE EXHIBIT B). THE EXECUTION OF THE SEARCH WARRANT WAS UNLAWFUL AND EXCEEDED THE SCOPE OF THE WARRANT WHEN LAW ENFORCEMENT CONDUCTED A MANUAL SEARCH OVER THE INTERNET TO OBTAIN FILES LOCATED ONLY ON A REMOTE-STORAGE CLOUD-ACCOUNT HOSTED BY A THIRD-PARTY PROVIDER, AND THEN TRANSFERRED THESE FILES FROM THE GOOGLE-DRIVE ACCOUNT TO THE DEFENDANT'S PHONE.

ALL DATA LOCATED "ON OR IN" THE CELLPHONE (AS SPECIFIED IN THE WARRANT) WOULD HAVE BEEN RECOVERED BY THE INITIAL DATA EXTRACTION USING THE SPECIALIZED SOFTWARE, WHICH WAS NOT THE CASE FOR THE TWO FILES IN QUESTION. IN ADDITION, THE CONTENT DEPICTED IN THE VIDEOS WERE SUBSTANTIVELY UNRELATED TO THE TYPES OF CRIMES SPECIFIED IN THE WARRANT. PRIOR TO REMOVING THE CELLPHONE FROM AIRPLANE-MODE AND CONDUCTING A MANUAL SEARCH THAT INCLUDED CLOUD-BASED ACCOUNTS, LAW ENFORCEMENT SHOULD HAVE SOUGHT A SEPERATE WARRANT, IF THEY HAD PROBABLE CAUSE TO DO SO. IT IS AXIOMATIC THAT EVIDENCE RESULTING FROM AN ILLEGAL SEARCH CANNOT BE THE BASIS OF PROBABLE CAUSE SUPPORTING A SUBSEQUENT SEARCH WARRANT, AND THUS THE VIDEO FILES SHOULD HAVE BEEN CONSIDERED "FRUIT OF THE POISONOUS TREE" AND SUPPRESSED AS EVIDENCE THROUGH THE EXCLUSIONARY RULE.

GROUND #2: THE TRIAL COURT ERRED IN VIOLATING THE DEFENDANT'S FIFTH AND
FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS BY ALLOWING THE
ADMISSION OF UNRELATED, BUT HIGHLY PREJUDICIAL, HEARSAY VIDEO
EVIDENCE AND IN SUBSEQUENTLY DENYING THE DEFENDANT'S MOTION
FOR A MISTRIAL...

MUCH OF THE LEGAL ARGUMENTATION FOR GROUND #2 HAS BEEN COVERED IN
THE DEFENDANT'S DIRECT APPEAL BRIEF, WHICH IS APPENDED TO THIS DOCUMENT
AS EXHIBIT A. THE PROSECUTION WAS ALLOWED TO ADMIT TWO VIDEOS INTO EVIDENCE
DURING TRIAL. THESE VIDEOS WERE: (1) A TWO-MINUTE LONG VIDEO RECORDED ON
ON 07/23/2017 (ENTITLED 20170723_613650.MP4) DEPICTING THE ALLEGED VICTIM
PERFORMING ORAL SEX ON AN UNIDENTIFIED MALE; AND (2) A FIFTY-MINUTE
LONG VIDEO RECORDED ON 08/21/2017 (ENTITLED 20170821_045458.MP4)
DEPICTING A DOMESTIC DISPUTE BETWEEN THE DEFENDANT AND THE ALLEGED
VICTIM IN WHICH NO SEXUAL ACTIVITY OCCURS.

THE SECOND VIDEO WAS ADMITTED INTO EVIDENCE UNDER FLORIDA STATE STATUTES
90.404(2)(c) AND 90.404(2)(c) (ALSO REFERRED TO AS THE "WILLIAMS RULE"), WHICH
ALLOW EVIDENCE FROM COLLATERAL CRIMES OF A SUBSTANTIVELY SIMILAR NATURE TO
THE CHARGED OFFENSE TO BE USED IN TRIAL. IN ADDITION TO BEING HEARSAY EVIDENCE,
THIS SECOND VIDEO DOES NOT DEPICT ANY ACTUAL CRIME FOR WHICH THE DEFENDANT
WAS EVER CHARGED OR PROSECUTED, AND IS SEPERATED IN TIME FROM THE EVENTS
DEPICTED IN THE FIRST VIDEO RECORDING BY APPROXIMATELY A MONTH.

THE FIRST VIDEO DOES CONTAIN THE ALLEGED OFFENSE WITH WHICH THE DEFENDANT
IS CHARGED, HOWEVER, IT SOLELY REPRESENTS HEARSAY EVIDENCE AND, HENCE, SHOULD
HAVE BEEN FOUND INADMISSABLE. IN ADDITION, IN HER INITIAL INTERVIEW BY THE
POLICE, THE ALLEGED VICTIM STATED SHE HAD NO MEMORY OF THE EVENTS OF
07/23/2017 BECAUSE SHE "HAD DONE SO MUCH DOPE" AT THE TIME. FURTHER, IN
TRIAL DURING CROSS-EXAMINATION, THE ALLEGED VICTIM ADMITTED THAT THE
07/23/2017 VIDEO NEITHER CONTAINED A FIREARM NOR INCLUDED ANY THREATS, AND
DESPITE THERE BEING INDICATIONS ON THE VIDEO OF HER BEING UPSET, THAT SHE
NEVER DENIED CONSENT TO THE SEXUAL ACTS SHE PERFORMED:

Q: DO YOU REMEMBER WHAT HAPPENS AFTER THAT RECORDING STOPS?
A: NO
(PAGE 77, LINES 23-25)

Q: WERE YOU ON DRUGS AT THE TIME OF THIS VIDEO?
A: YES
(PAGE 78, LINES 1-2)

Q: OKAY, THERE'S NO GUN SHOWING ON THAT VIDEO; IS THAT CORRECT?
A: YES
Q: AND THERE'S NO THREATS MADE TO YOU ON THE VIDEO; IS THAT CORRECT?
A: YES
(PAGE 85, LINES 14-19)

THE TRIAL COURT ERRED IN ALLOWING EITHER VIDEO TO BE ADMITTED DUE TO THE
HEARSAY NATURE OF THE EVIDENCE. ADDITIONALLY, THE DEFENDANT'S DUE PROCESS RIGHTS
WERE VIOLATED SINCE THE SECOND VIDEO WAS HIGHLY PREJUDICIAL, YET NEITHER
QUALIFIES AS A "COLLATERAL CRIME" NOR CONSTITUTES A SIMILAR ACT TO THE
EVENTS DEPICTED IN THE FIRST VIDEO. THE TRIAL COURT ALSO ERRED IN ALLOWING
THE SECOND VIDEO TO BECOME A FEATURE OF THE TRIAL AND DENYING THE SUBSEQUENT
MOTION FOR A MISTRIAL. THE FIRST VIDEO DEPICTING THE CHARGED OFFENSE WAS
ONLY TWO MINUTES IN LENGTH, COMPARED TO THE FIFTY-MINUTE SECOND VIDEO. IN ADDITION,
THE VIDEO OF THE CHARGED OFFENSE WAS ADMITTED AND PUBLISHED ONLY ONCE FOR THE
JURORS, WHILE THE SIGNIFICANTLY LONGER FIFTY-MINUTE VIDEO WAS PLAYED THREE
TIMES FOR THE JURORS, THUS BECOMING A FEATURE OF THE TRIAL.

AS A RESULT OF THESE ERRORS, THE VERDICT SHOULD BE OVERTURNED AND DECLARED
A MISTRIAL, AND THE VIDEOS DECLARED TO BE INADMISSABLE IN ANY FUTURE TRIAL~

GROUND #3: BASED ON EVIDENCE DISCOVERED AFTER THE TRIAL, THE DEFENDANT'S FIFTH
AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS WERE VIOLATED
WHEN THE STATE ATTORNEY (EITHER EXPLICITLY OR IMPLICITLY) SUBORNED
PERJURED TESTIMONY FROM THE ALLEGED VICTIM BY OFFERING HER AN
IRRESISTABLE INCENTIVE TO FABRICATE CLAIMS IN ORDER TO CONVICT
THE DEFENDANT.,,

THE ALLEGED VICTIM ACCUSED THE DEFENDANT OF RAPING HER 10-12 TIMES DURING THE
EIGHT MONTHS THEY WERE LIVING TOGETHER. IT HAS BEEN FIRMLY ESTABLISHED, BOTH
PRIOR TO AND IN HER TESTIMONY AT THE JURY TRIAL ON 08/29/2019, THAT THE ALLEGED
VICTIM HAD NEVER MADE ANY ACCUSATIONS OF ABUSE AGAINST THE DEFENDANT TO LAW
ENFORCEMENT, NOR HAD SHE EVER MENTIONED ANY SUPPOSED ASSAULTS TO HER FRIENDS
OR FAMILY.

THE ONLY REASON ANY CHARGES WERE EVER FILED WAS A RESULT OF DETECTIVES APPROACH-
ING THE ALLEGED VICTIM AFTER FINDING A TWO-MINUTE LONG VIDEO DEPICTING HER
PERFORMING ORAL SEX ON AN UNIDENTIFIED MALE (I.E., ONLY THE MAN'S PENIS IS VISIBLE
IN THE VIDEO). IT WAS ONLY AFTER LAW ENFORCEMENT APPROACHED THE ALLEGED
VICTIM WHILE SHE WAS ALREADY INCARCERATED AND TOLD HER THEY SUSPECTED THE
VIDEO OF DEPICTING A SEXUAL BATTERY (AND EXPLAINING HOW TESTIFYING AGAINST
THE DEFENDANT WOULD HELP WITH HER OWN CASE) DID SHE SUDDENLY CHOOSE TO
FABRICATE A STORY OF BEING RAPED.

> Q: OKAY. LAW ENFORCEMENT CAME AND TALKED TO YOU IN THE JAIL; IS
> THAT RIGHT?
> A: YES
>
> Q: AND THEY TOLD YOU WHAT WAS ON THE VIDEO; IS THAT RIGHT?
> A: YES
>
> Q: ALL RIGHT. AND YOU TOLD THEM YOU HAD DONE A LOT OF DOPE DURING
> THAT TIME; IS THAT RIGHT?
> A: YES
>
> Q: AND YOU TESTIFIED TODAY YOU DON'T REMEMBER WHAT HAPPENED
> AFTER THIS VIDEO; IS THAT CORRECT?
> A: YES
>
> (PAGE 85, LINES 2-13)

Q: THE DAY THAT THE POLICE CAME, THAT WAS IN OCTOBER 2014, CORRECT?

A: YES

Q: OKAY. YOU WERE ARRESTED THAT DAY?

A: YES

Q: So THE POLICE TOOK YOU TO JAIL? YES?

A: YES

Q: AND THEN THEY CAME AND TALKED TO YOU, WHAT, ABOUT 10 DAYS LATER IN JAIL?

A: YES

(PAGE 88, LINES 9-18)


Q: AND THEY TOLD YOU WHAT THEY SAW IN THOSE VIDEOS?

A: YES

Q: OKAY. THEY TOLD YOU BEFORE YOU HAD EVER TOLD THEM WHAT HAPPENED; IS
   THAT RIGHT?

A: YES

Q: OKAY. YOU HADN'T EVER TRIED TO CONTACT THE POLICE BEFORE THEY CAME TO
   YOU; IS THAT RIGHT?

A: YES

Q: OKAY. AND THEY TOLD YOU THEY BELIEVED YOU WERE BEING ABUSED; IS THAT RIGHT?

A: YES

(PAGE 89, LINES 3-14)


AT THE TIME OF HER INCARCERATION (WHEN SHE WAS FIRST APPROACHED BY LAW ENFORCEMENT),
THE ALLEGED VICTIM HAD PREVIOUSLY SERVED TIME IN PRISON AND WAS LIKELY TO SERVE
ADDITIONAL PRISON TIME IF CONVICTED OF THE CHARGE SHE WAS CURRENTLY BEING
HELD ON, BUT AFTER COOPERATING WITH THE POLICE IN THE ACCUSATIONS AGAINST THE
DEFENDANT, SHE WAS RELEASED, THEN, FOR OVER A YEAR, THE ALLEGED VICTIM SHOWED NO
INTEREST IN PURSUING THE CASE AGAINST THE DEFENDANT, NOR DID SHE RESPOND TO
THE STATE ATTORNEY'S REPEATED REQUESTS TO BE DEPOSED.

THEN ON 02/27/2019, THE ALLEGED VICTIM WAS ARRESTED ON DRUG CHARGES AND
BONDED OUT, BUT WAS ARRESTED AGAIN ON 04/04/2019 FOR ADDITIONAL DRUG CHARGES.
ACCORDING TO THE WEBSITE WWW.ARREST.COM, BETWEEN THE TWO ARRESTS THE

ALLEGED VICTIM ACCRUED A TOTAL OF EIGHTEEN DRUG-RELATED CHARGES,
INCLUDING: TRAFFICKING HEROIN, COCAINE, AND METHAMPHETAMINE, AS WELL AS
POSSESSION OF HEROIN, COCAINE, METHAMPHETAMINE, FENTANYL, MDMA, AMALZAPRAM,
AND OTHERS. AS THE ALLEGED VICTIM STATED IN HER DEPOSITION ON 04/11/2019:

> Q: WHAT CHARGES DO YOU HAVE?
> A: TRAFFICKING HEROIN
> Q: OKAY, AND WHAT ELSE?...
> A: POSSESSION OF HEROIN, POSSESSION OF METH, POSSESSION OF COCAINE, POSSESSION
>    OF ALPRAZOLAM, POSSESSION OF MARIJUANA, RESISTING AN OFFICER,
>    AND PETTY THEFT
>    (PAGE 33, LINES 3-5 ; 13-16)

AND AS THE ALLEGED VICTIM TESTIFIED AT THE DEFENDANT'S 08/29/2019 TRIAL:

> Q: OKAY, WHAT ARE YOUR CHARGES?
> A: ALL OF THEM?
> Q: YES
> A: POSSESSION OF HEROIN, POSSESSION OF METHAMPHETAMINE, RESISTING AN OFFICER,
>    PARAPHENALIA, POSSESSION OF MARIJUANA, TRAFFICKING HEROIN, AND - - -
>    I AM NOT SURE OF THE REST
>    (PAGE 67, LINES 24-25 AND PAGE 68, LINE 1)

AFTER HER ARREST ON 04/04/2019, THE ALLEGED VICTIM WAS THEN HELD IN CUSTODY
WITHOUT A BOND TO ENSURE HER COOPERATION IN BEING DEPOSED AND IN TESTIFYING
AT THE DEFENDANT'S TRIAL (AS THE ASSISTANT STATE ATTORNEY ADMITTED DURING
A PRE-TRIAL CONFERENCE.

IT WAS ONLY AFTER THE DEFENDANT WAS CONVICTED THAT THE NEW EVIDENCE
OF PROSECUTORIAL MISCONDUCT (IN SUBORNING PERJURED TESTIMONY FROM THE ALLEGED
VICTIM) BECAME APPARENT. THIS MISCONDUCT WAS A PLEA DEAL IN WHICH THE
ALLEGED VICTIM RECEIVED A SIGNIFICANTLY LESSER SENTENCE IN RETURN FOR
COOPERATING WITH THE PROSECUTION BY FABRICATING HER RAPE STORY IN ORDER
TO CONVICT THE DEFENDANT. THIS PLEA AGREEMENT WAS DIRECTLY NEGOTIATED
BY AMY BETH BERNDT, THE PRIMARY ASSISTANT STATE ATTORNEY IN CHARGE
OF PROSECUTING THE CASE AGAINST THE DEFENDANT (SEE EXHIBIT C), AN

OVERT CONFLICT OF INTEREST. AS PART OF THE PLEA DEAL, THE ALLEGED VICTIM (WHO WAS ALREADY A CONVICTED FELON AND HAD PREVIOUSLY DONE PRISON TIME IN THE FLORIDA DEPARTMENT OF CORRECTIONS) RECEIVED A SENTENCE OF SEVEN MONTHS TIME SERVED AND FIVE YEARS PROBATION AFTER ALL EIGHTEEN COUNTS FROM THE TWO CASES WERE CONSOLIDATED (AND DESPITE THE FACT SHE HAD PREVIOUSLY FAILED OUT OF DRUG COURT).

DESPITE THE ALLEGED VICTIM'S CLAIM DURING TRIAL TO HAVE NOT BEEN PROMISED ANYTHING IN EXCHANGE FOR HER TESTIMONY, THE STATE ATTORNEY SUBORNED TESTIMONY FROM HER (EITHER EXPLICITLY OR IMPLICITLY) BY OFFERING HER AN IRRESISTIBLE INCENTIVE TO CONVICT THE DEFENDANT BY ANY MEANS POSSIBLE. IN ADDITION, THE STATE ATTORNEY KNEW BEFOREHAND THAT THE ALLEGED VICTIM'S TESTIMONY WAS EXTREMELY PREJUDICED, NOT SIMPLY BECAUSE SHE WOULD DIRECTLY BENEFIT FROM THE OFFERED PLEA DEAL, BUT ALSO BECAUSE THE ALLEGED VICTIM HAD PREVIOUSLY BEEN CONVICTED OF PERJURY, AS SHE TESTIFIED AT TRIAL:

> Q: OKAY. HAVE YOU EVER BEEN CONVICTED OF A CRIME OF DISHONESTY?
> A: YES
> Q: HOW MANY TIMES?
> A: JUST ONCE

FURTHER, DESPITE THE STATE ATTORNEY'S CLAIMS TO THE CONTRARY, THE PROSECUTION ATTEMPTED TO KEEP THE INFORMATION PERTAINING TO THEIR UNDERHANDED DEAL WITH THE ALLEGED VICTIM FROM THE DEFENDANT. ACCORDING TO THE STATE ATTORNEY'S OFFICE, IN NOVEMBER OF 2019, A COPY OF THE SAID PLEA AGREEMENT WAS SENT TO THE OFFICES OF TWO LAWYERS REPRESENTING THE DEFENDANT: ALISON KERESTES AND DANIEL HERNANDEZ, HOWEVER, AT THAT POINT IN TIME, ALISON KERESTES HAD ALREADY WITHDRAWN AS COUNSEL FOR THE DEFENDANT (AND WAS THUS, TECHNICALLY, PRO SE), WHILE DANIEL HERNANDEZ WAS REPRESENTING THE DEFENDANT IN A TOTALLY UNRELATED CASE AND HAD NEVER BEEN INVOLVED IN THE SEXUAL BATTERY CASE (SEE EXHIBIT D). THE STATE ATTORNEY'S OFFICE NEVER MADE

ANY ATTEMPT TO NOTIFY THE DEFENDANT DIRECTLY OF THE PLEA AGREEMENT.

IT IS MY CONTENTION THAT, AS A RESULT OF THE HIGHLY QUESTIONABLE NATURE OF THE PLEA DEAL AGREEMENT NEGOTIATED BETWEEN THE STATE ATTORNEY AND THE ALLEGED VICTIM IN EXCHANGE FOR HER TESTIMONY, THAT SAID TESTIMONY BE IMPEACHED IN ITS ENTIRETY, AND THAT THE DEFENDANT'S CONVICTION BE OVERTURNED AND HIS SENTENCE VACATED. I WOULD ALSO URGE THAT AMY BETH BERNDT BE PREVENTED AS SERVING AS PROSECUTOR IN ANY AND ALL TRIALS INVOLVING THE DEFENDANT.

# EXHIBIT A

## STATEMENT OF THE CASE

### *Jurisdiction*

The Appellant, David Long, appeals the conviction for Sexual Battery with a firearm and sentence, following a jury trial in Marion County. (R    474-475, 477-479, 496-497)

### *Other relevant facts*

Detective Michael Bowman responded to a local hospital the morning of October 7, 2017, to investigate an unresponsive Lori Smith, who eventually died of a drug overdose.  Two girls dropped Smith at the emergency room, and one told the detective Smith ingested controlled substances the night of October 5, 2017, inside an Ocala mobile home.  Bowman's investigation of the final text message from Smith's cell phone led to a phone that was registered to the Appellant's residence.

After meeting Bowman and Officer Keujntes that afternoon, Long was taken to the hospital due to a medical episode. Before being transported in the ambulance, medics handed personal items in Long's possession. After his return home, police arrested Long for controlled substances and a search warrant executed of Long's residence that evening.  Long's cell phone was placed in evidence that day and a search warrant of Long's cell phone executed October 12, 2017.  The initial extraction of data copied from the phone did not provide any video.  Bowman's subsequent search used the internet to access two videos held in remote storage on

1

Google servers in the cloud. After locating the video and downloading them on to Long's phone, Bowman visited J.P. in the County jail and that discussion lead to the present charges. A motion to suppress the videos was filed. The July 23, 2017, video filmed in Long's bedroom depicted J.P. performing oral sex on Long. Law enforcement viewed the videos as sexual battery by Long but Long maintained the sexual activities were between two consenting adults.

The State charged Long, by an amended information[1] filed in Marion County, with the July 23, 2017, commission of sexual battery involving threatened use of force or violence with a firearm, upon J.P., a twenty-two year old resident that lived in Long's residence for the last six to eight months and had a history of drug abuse. . (R 41-42). The State filed other cases against Long for Smith's overdose death and possession of controlled substances. (R 61-62).

In the weeks leading up to trial, hearings were held on a defense motion to suppress two videos taken in a cell phone search and a Williams Rule hearing. (H 519-608, 609-623, 624-680). The defense moved to suppress two videos found by Detective Bowman in execution of a search warrant for Long's cell phone. (R 91-

---

[1] The amended information was filed August 16, 2019 and Appellant is moving to supplement the record with the amended information. (H 611-612)

2

93, 94-137, 408-409)  Transcripts from the first suppression hearing, addressing the warrantless seizure of the phone from medical personnel, conducted in Long's other case was admitted in evidence.  The second hearing occurred was held August 22, 2019, to address the October 11-12, 2017, execution of the search warrant for appellant's cell phone. (H 519-608, 624-680).  The trial court denied the motion and entered a written order.  Appellant preserved the issue for appeal when the videos were introduced in evidence at trial. (R. 434-444; H 672; T 75, 79, 93).

The State filed notice of intent to offer Williams Rule evidence. (R. 84-88, 191-195, 196-197).  The Williams rule hearing was held August 16, 2019. (H 609-623). Over objection, the court ruled statements by J.P. of uncharged, sexual batteries by Long during the last year and the August 21, 2017, video admissible at trial. (R 499). The second video tape was played twice for jurors. (T 79, 93, 137). During closing arguments, the court denied a mistrial motion asserting the Williams Rule evidence had become a feature of the trial.  (T 191).

On October 11, 2017, Luis Camacho, Agent with the United Drug Enforcement Strike Team (UDEST) filed a search warrant affidavit for Long's black Samsung model SM-J320V, cellular telephone, located in police evidence. (R 295-305; H 640).  The warrant authorized a search of "Data contained on/in the cellular telephone including but not limited to: inbound and outbound call data, text messages, all contacts, contact list(s), pictures, videos, mobile application data,

3

phone data and SD data pertaining to violations of narcotics, weapons and firearm, and homicide. Judge Pope authorized the warrant. (R. 295-305; H 640, 650-651).

Detective Michael Bowman of the Ocala Police Department and Agent Darin Viselli of UDEST executed the search warrant.   In the August 22, 2019, hearing, the previous transcripts and three affidavits and search warrants were introduced. (R. 206-286, 287-294, 295-305, 306-315; H 637-641).   Long's residence was searched October 7, 2017; Long's Samsung Model SM-320 cellular phone was searched October 12, 2017; and the Google Search Warrant was submitted on October 25, 2017, to the service provider.  The affidavit included statements about the two videos located in the Google Drive found in the search of Long's cell phone and interview with J.P. about the videos. The listed crimes in the Google Search Warrant were drug abuse statute, Homicide and Sexual Battery, and the scope of the search included a search of the listed Google Drive digital/electronic information storage, and photo storage services, provided to Google customers in which Google maintains computer disk storage space on their own computers system servers for use of communication subscribers and for any stored multimedia files on two Google Drive ID's. Google executed the search warrant. (R. 21-23; H 73, 74-83, 85).

Bowman stated his purpose and reasons to search Long's cell phone: (1) Lori Smith's last text the evening of October 5, 2017, from her cell phone were to a phone number that was registered with a social media account (Facebook) for David Long.

4

The text requested someone open the door; (2) Smith allegedly sat on a chair in Long's living room drugs, consumed drugs around 10:00 p.m. on October 5, 2017, and became unresponsive. Smith remained in the same location until transported to the emergency room the next day; and (3) Long used his cellphone to monitor or view the two cameras in the home. Bowman wanted any recordings or video of the front door area and Long's living room or home on October 5-6, 2017.    (H 642-643; T 33).

Agent Darin Viselli and Detective Bowman executed the search warrant of Long's Samsung cell phone on October12, 2017. Bowman brought the phone to Viselli, a digital forensics examiner who conducted a forensic analysis, who stated it is office policy to secure the phone in airplane mode to preserve the phone content from outside interference and avoid the possibility of remote swiping of the phone memory.   In airplane mode, Viselli used Cellebrite, a device with software he attached to Long's cellphone to extract and copy information and contents from Long's cell phone.  The digital data included inbound and outbound call data, text messages, all contacts, contact lists, mobile app data, phone data and SD card data. Viselli put the contents of the phone from Cellebrite to a CD or thumb drive in a readable media format.  This information was provided this to Detective Bowman and Agent Camacho. (R 305; H 643, 654-655; T 34).

5

Bowman reviewed the Cellebrite extraction of Long's phone and stated the content included text messages between Smith and Long's phones on October 5, 2017 but did not include any video from the night of Smith's overdose. (H 643-644, 654). Bowman manually inspected Long's phone by hand, turning the device on to establish internet connection. Bowman opened a Google Drive Application on Long's phone. Bowman described the Google Drive app as a remote storage application stating Google has a hard drive for personal storage that you can use the internet to access remote storage of communication or videos held on Google computers or servers.

In Google Drive, Bowman located videos. (H 644-646). Bowman accessed the internet on Long's phone to use the Google Drive application and found video files under the username; NEVERHALFHASSD@GMAIL.com. The two videos in the Google Drive that depicted a sexual battery of J.P. Bowmn pulled the videos from the remote storage on the Google server and downloaded the two videos to Long's phone. Bowman stated he downloaded the digital data to avoid remote swiping by the incarcerated Long. (H 647).

The two-minute video recorded on July 23, 2017, titled 20170723_013650.mp4, contained the oral sex video in the charged offense. In the video, J.P. is shaking, crying but there are no threats made and no gun discussed or present. Long comments to J.P. about oral sex and Long's organ penetrated J.P.'s

6

mouth. (H   ; T 85). In Bowman's October 16, 2017, visit to see J.P. in the jail, after Bowman located the videos, J.P. told Detective Bowman that before recording, Long used a blue and teal handgun to threaten J.P.. (T. 18, 85).  The second video, fifty minutes in length and recorded August 21, 2017, is titled 20170821_045458.mp4. Long looked at J.P.'s phone and was upset about her contact with other males. The video was introduced as collateral crime evidence and contains threats of violence against J.P. if she does not agree to participate in sexual acts. Long states, "[l]ook this is going to go one of two ways.  One, where you don't get hurt and the other one where you do get fucking hurt."  Long continues telling J.P., "[s]of we are going to Fuck."  When J.P. responds no, Long says, "[y]eah we are or I am going to beat the fucking shit out of you." (T 78-79, 93)

Bowman wrote a search warrant affidavit for two Google gmail accounts; "neverhalfassed@gmail.com and professor3283@gmail.com, describing the two videos and his October 16, 2017, interview with J.P. about the videos. The search warrant was issued pursuant to Section 92.605, Florida Statutes and listed the scope of the search to include the listed Google Drive digital/electronic information storage, and photo storage services, to its customers in which they reserve and/or maintain computer disk storage space on their own computer system servers for the use of the communication subscribers/customers/users associated with their company. The Google warrant requested Google search for any stored multimedia

7

files (pictures and/or videos) created, backed up or deleted with Google Drive Id's from January 1, 2017, through October 7. 2017. (R  129-133, 306-315; H 647-648).

Defense counsel advanced three arguments for suppression of the videos: (1) The cell phone was illegally seized from Long at his home with no exception to the warrant requirement; (2) Bowman exceeded the authorized search terms that only permitted access to video and pictures that were on or in the phone.  Bowman exceeded the terms of the warrant to go to the internet to access files or videos hosted in remote storage, not located locally on Long's device, and retrieve video stored in Google Drive account, an electronic storage media located outside the phone: (3) the warrant is overbroad and unconstitutional. (R 91-93, 94-137; H 657- 663).

Following a motion to suppress hearing on April 29, 2019, in 2017-CF-003526, another hearing on August 22, 2019, relating to the search of Long's phone, Judge Anthony M. Tatti denied the motion to suppress after argument by counsel. (R 434-444; H 519-608, 624, 672).

At trial, the State admitted six screen shots from the July 23, 2017, video obtained in the Google search warrant. (R 423-432; T 163-166) The jury returned a verdict of guilt for sexual battery involving threatened use of force or violence with a firearm. (R 449; T 214).  The court adjudicated Long guilty and imposed a life imprisonment with a fifty-year minimum mandatory. (RR 474, 477)

8

## STATEMENT OF FACTS

Sergeant Dustin Keuntjes and Detective Bowman arrived at Long's residence, 2940 NW 18th Street, Highway 27, Ocala, Florida, to speak with Long about Lori Smith as part of an ongoing investigation. (H 326-328; T 22-23, 31-32)  It was reported that on the evening of October 5, 2017, Smith arrived at Long's house, sat on a chair in his living room and ingested a controlled substance, where she remained and became unresponsive.  The next day, October 6, 2017, two females transported Smith to the emergency room.  Bowman's investigation at the hospital revealed the last text from Smith's cell phone was to a number registered to a Facebook social media profile for David Long. (H 321-325, 338)

During officers visit to Long's residence, Long confirmed Smith had been in the house and suffered a panic attack before transport to the emergency room. (H 329; 383) Bowman observed two cameras around Long's mobile home, one outside and one in the kitchen directed towards the counter.  When asked about the camera, Long indicated he could see the camera on his cell phone. (H 326-330).  The officers observed a firearm in Long's kitchen.  After asking officers to leave, Long followed their directions to step outside as officers secured the residence for a search warrant.

Long suffered a medical episode in the front yard, rolling around on the ground and holding his chest.  Paramedics responded to Long's residence. (H 351-

353, 359-361; T 24-25).  Before transporting Long for medical treatment, paramedics collected Long's cell phone, a small zippered case, a rolled-up bundle of $1, 500 cash, and a key. (H 354-355, 362).  Medics handed Long's property to Officer Keuntjes, who laid the items on the railing outside the front door.

Long's property was placed in evidence and taken to the drug squad's office, where Agent Luis Camacho located controlled substances methamphetamine and heroin in the small bag.  Long was returned to his residence and arrested for possession of methamphetamine in the case. (H 369-372).  One female resident, J.P., was taken into custody on a warrant.  In execution of the search warrant for Long's home police found a teal colored handgun at the base of the bedroom nightstand but did not search Appellant's computer or cameras. (R 287-294; T 55-61)

After locating and downloading two videos from remote storage to Long's phone, Detective Bowman went and met with J.P. at the County jail to review the videos. J.P. reported Long forced her to perform sexual acts on multiple occasions when she resided in his home. (H 617; T 88-90).  On the offense date, J.P. was twenty-two years old and a drug abuser since the age of fifteen.  Police found J.P. in Long's residence on October 7, 2017, as they secured the home.  J.P. was taken into custody on an outstanding arrest warrant for controlled substances. After her

10

grandmother's death in early 2017, J.P. was without a place to live and moved in with Long. J.P. lived in the residence six to eight months. (T 67-72, 88).

J.P. testified that Long forced her to have sex with him one month after she moved in the residence. (T 71). J.P. estimated that in the six to eight months she resided with Long, he sexually assaulted her ten to twelve times. The offenses were vaginal and oral and always involved violence. (T 73) J.P. acknowledged there was no weapon or threats in the video on July 23, 2017, but testified that before he turned the camera on to video, Long put a gun to her head once and made threats. J.P. denied giving consent to Long for sexual acts. (T 73-78).

Over objection, the State introduced the July 23, 2017 and the August 21, 2017 videos at trial and they were published for jurors. (T 75, 79, 93). The prosecutor published the August 21 video once more (T 137) and again in closing argument. (T 191-195).

## SUMMARY OF ISSUE

**ISSUE I**    The Search Warrant for Long's cell phone was designed to capture any existing video from Long's residence at a specified period.  The warrant was overbroad to permit a general warrant without limitations or guidance to the police and  lacked particularity in failing to identify the remote electronic storage as a particular places to be searched and did not give a description of the particular video to be searched.  The warrant authorized a search of video on or in Long's phone. The execution of the search warrant was unlawful and exceed the scope of the warrant when law enforcement conducted a manual search and went outside the phone in their search to obtain video located in a remote storage cloud hosted by a third-party provider.

**ISSUE II**    The trial court erred to admit Williams Rule Evidence and deny the motion for a mistrial.  The video of the charged offense was two minutes long and the collateral crime was fifty minutes in length.  The video of the collateral crime evidence was played for jurors three times and became a feature of the trial.

12

## ISSUE

THE TRIAL COURT ERRED TO DENY THE MOTION TO SUPPRESS VIDEO LOCATED IN REMOTE STORAGE, OUTSIDE THE CELL PHONE SEARCHED WHEN THE WARRANT WAS OVERBROAD AND THE SEARCH EXCEEDED THE SCOPE OF THE WARRANT.

## PRESERVATION

Appellant reserved his right to appeal the denial of his motion to suppress two videos recovered in execution of a search warrant of Long's cell phone. The written denial only addressed the search warrant and its execution in the final paragraph. (R. 91-93, 434-444; H 657-672; T 34, 75, 79, 93).

## STANDARD OF REVIEW

On appeal of a motion to suppress evidence, this court defers to the trial court's factual findings but affords no deference in applying the law to the facts and reviews legal conclusions de novo." State v. Glaztmayer, 789 So. 2d 297 (Fla. 2001); Taylor v. State, 848 So. 2d 1191 (Fla. 5th DCA 2003).

## SUMMARY OF ARGUMENT

The warrant authorizing the search of Long's cell phone was overbroad in violation of the particularity requirement under Article I, section 9, of the Florida Constitution and the Fourth Amendment of the United States Constitution. The warrant authorized a general search of various contents on or in Long's cell phone;

13

did not provide a temporal limit for the search of pictures and videos and were not limited to the time period in which the alleged illegal activity occurred on October 5-7, 2017. The warrant failed to identify with particularity the specific place to be searched and the pictures or video to be seized. The warrant did not include any remote storage hosted by service providers who host and maintain files outside of the cell phone. The scope of a search under a warrant is generally defined by its expressed object. The warrant authorized a search of all videos on or in Long's phone. Officer Bowman's manual search of the phone, after all content from the phone was extracted and copied, was unreasonable and exceeded the scope of the warrant when Bowman made an internet connection to go outside of the content in Long's phone and access, search and find two videos not located or stored on or in Long's phone, but stored remotely in the cloud on equipment and servers hosted by a third party internet and remote storage service provider, Google. To access stored memory, Federal and Florida Statutes require for one to obtain access to files or video in third party storage or facility, a search warrant supported by affidavit must be served on the third-party service provider.

The search of the Google Drive remote storage located on Google servers and equipment was not permitted under the specific terms in the search warrant for Long's phone. The evidence was the product of an unlawful search and the trial court erred to deny the motion to suppress. On October 25, 2017, Detective

14

Bowman submitted an affidavit and search warrant, in compliance with Section 92.605, Florida Statutes (2016), on the third-party service provider Google. The affidavit to establish probable cause provided a detailed description of the two videos accessed from the Google Drive service on Long's phone and the Detective's subsequent interview with the victim about the content of the videos. Evidence resulting from an illegal search cannot be the basis of probable cause supporting a subsequent search warrant. See State v. Morsman, 394 So.2d 408, 410 (Fla.1981) (citing Purcell v. State, 325 So.2d 83 (Fla. 1st DCA 1976). The search of the video, based on an unreasonable search, was unlawful and the video and resulting conversation with J.P. is fruit of the poisonous tree to be excluded. The remaining facts in the Google search warrant affidavit do not amount to probable cause or establish a nexus of the criminal activity connected to all of Long's Google drive multimedia files.

The warrant served on internet service provider Google declared the evidence of multiple crimes may be located at Google address in Mountain View, California and listed the scope of the search to include Google Drive digital/electronic information storage, and photo storage services, to its customer in which they reserve and/or maintain computer disk storage space on their own computer system servers for the use of the communication subscribers/customers/users associated with their

15

company. (R. 129-133, 313-315). This is a far different description of the area to be searched than the items on or in Long's Samsung cellular phone.

## FOURTH AMENDMENT

The Fourth Amendment of the U.S. constitution and Art, I § 12 of Declaration of Rights in the Florida Constitution provides: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Warrants must "particularly describe the place or places to be searched, and the person or persons, thing or things to be seized." Sections 933.01 through Section 933.08, Florida Statutes (2016), govern Search Warrants issued in the State of Florida and the requirement for an accompanying affidavit.

In protecting against unreasonable searches and seizures, the Fourth Amendment mandates two requirements for search warrants: a warrant must be supported by probable cause, and it must describe with particularity "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; Groh v. Ramirez, 540 U.S. 551, 557 (2004).

## CELL PHONE DEVICES

According to the United States Supreme Court, in 2018, there were 396 million cell phone service accounts in the United States. Carpenter v. U.S., - - U.S.

16

- -, 138 S. Ct. 2206 (2018). The High Court emphasized that there are more cell phone accounts in the United States than there are people. The United States Supreme Court in Riley v. California, 573 U.S. 373 (2014), granted heightened protections to cell phone data in ruling information on a cell phone cannot be searched incident to arrest, without a warrant. In warrantless searches, the Federal Seventh Circuit noted, both Riley and Carpenter, support the argument that "the Supreme Court has recently granted heightened protection to cell phone data." United States v. Wanjiku, 919 F.3d 472, 484 (7th Cir. 2019). The Riley court noted that modern cell phones, as a category, implicate privacy concerns far beyond those implicated by a search of physical properties like a cigarette pack, a wallet, or a purse. The court mentioned "cell phone" is misleading shorthand, when many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone.

Exploring possible solutions, the Riley opinion noted one of the most distinguishing features of modern cell phones is their immense storage capacity and different methods of storing this data and files. Speaking of the cloud applications, the court commented the data a user views on modern cell phones may not in fact be stored on the device itself and therefore, a cell phone is not considered or equated with a container that is capable of only holding other objects.

## GOOGLE DRIVE REMOTE CLOUD STORAGE

As cloud storage has become cheaper and easily available, more and more people are choosing to utilize services that provide remote storage of their data. While convenient for users, it has raised privacy concerns about government access to stored data under the Fourth Amendment. The cloud, or cloud computing, is a model for enabling convenient, on-demand network access to a shared pool of configurable computing resources (e.g., networks, servers, storage, applications, and services). Corporations and individuals alike rely heavily on the cloud. Companies, such as Google, Amazon, and Microsoft, also host cloud services for companies and individuals. In practical terms, this means that individuals and corporations store large amounts of data with third-party service providers.

Long owned a Samsung cell phone with Android operating system that included Google support. One of the applications on Long's phone was the google drive, a remote or cloud-based storage application. Google Drive is a file storage and synchronization service created by Google. It allows users to store files in the Cloud, synchronize files across devices and share files. Google drive is a way to store your files on Google servers or "in the cloud". To access Google Drive requires an internet connection. Any documents, photos, videos or data that can be

18

accessed in the cloud from different locations, laptop, cell phone or other device are in the cloud or on Google servers, but not on or in the cell phone.

Appellant argued in the suppression hearing the video files searched and illegally seized by Bowman were not located or stored locally on Long's phone, but were on the Google server, in the cloud. This position is supported in Riley, where the court stated a cell phone is used to access data located elsewhere, at the tap of a screen. The Riley court continued that cell phones cell phones are using with increased frequency "cloud computing". Cloud computing is the capacity of Internet-connected devices to display data stored on remote servers rather than on the device itself. The search warrant did not list data or videos located in a cloud, remote storage or items hosted on third-party servers like Google or any other memory storage devices that are not on or in the phone. The United States Supreme Court compared the search of files accessed remotely—that is, a search of files stored in the cloud to finding a key in a suspect's pocket and arguing that it allowed law enforcement to unlock and search a house.

## FEDERAL STATUTE TO ACCESS TO REMOTE STORAGE

The United States Congress enacted provisions concerning stored wire and electronic communications access. The Electronic Communications Privacy Act ("ECPA'), 18 U.S.C.A. §§ 2701-2712, sets out the process for the government to

obtain information held by internet service providers and mandates that the government use certain minimal legal process to obtain the information they seek. Congress enacted he ECPA for several reasons, but mainly they wanted to protect ISP's from liability for releasing information about their customers to the government and they also wanted to establish a level of privacy in internet records and communications. The data protected by the ECPA is held by third party internet service providers[2], like Google. The Fourth Amendment and the ECPA restrict the government's ability to force a provider to disclose user information. On January 23, 2013, Google stated they demand that government agencies, from the locals to federal authorities get a probable-cause, court issued search warrant for content of its user email, Google Drive cloud storage and other platforms.[3]

Florida enacted a statute in 2003, to recognizes the validity of search warrants for information held by the host or service provider of files, n the company servers

_____

[2] The statute creates the privacy protection provided to Internet records and communication. The information the statute protects is not necessarily protected under the Fourth Amendment against unreasonable search and seizure. As the United States Supreme Court held in <u>Smith v. Md.</u>, 442 U.S. 735 (1979), one does not have either an objective or subjective expectation of privacy in the information they readily hand over to a third party.

[3] https://www.wired.com/2013/01/google-says-get-a-warrant/

at their facility. This statute warrant to execute the warrant in order to obtain communications and stored data for ISP information and cloud storage. Section 92.605, Florida Statutes (2003).

## SEARCH WARRANT

The warrant authorized to search a specific Samsung cell phone for data contained on/in the cellular telephone including but not limited to: pictures, videos, mobile application data, phone data an SD card data pertaining to violations of narcotics, Weapons and Firearms, and Homicide. The warrant did not include any mention of the description provided in the Google search warrant like remote storage, Google drive electronic information storage or photo storage services hosted, maintained by a third-party company. (R. 295-305).

## PARTICULARITY

For a search warrant to be sufficiently particular, the searcher must be able to reasonably ascertain and identify the things authorized to be seized. U.S. v. Abell, 963 F. Supp. 1178 (S.D. Fla. 1997). Nothing should be left to the discretion of the officers executing the warrant as to what should be seized and taken. State v. Nuckolls, 617 So. 2d 724 (Fla. 5th DCA 1993). The reasons to limit the government's search and seizure power was emphasized in Marron v. U.S., 275 U. S. 192, 196 (1927), stating, "the requirements that warrant shall particularly

21

describe the things to be seized makes general searches under them impossible and prevents the seizure of the one thing under a warrant describing another."

"In the context of searches of electronic devices, while recognizing the inherent risk that criminals can easily 'hide, mislabel, or manipulate files to conceal criminal activity,' we must also take care not to give the Government free rein to essentially do away with the particularity requirement by allowing it to examine every file on the device." United States v. Rarick, 636 Fed.Appx. 911, 914–15, (6th Cir. 2016). Constraints imposed by the "particularity requirement" are rather straightforward when applied to physical evidence. Based on the vast amount of information subject to storage on a personal cell phone, the particularity requirement is more flexible for electronically stored information. The Search Warrant for Long's cell phone failed to particularly list the location to be searched or particularly list the October 5-6, 2017, videos as particular items to be searched or where officers believed those pictures or video would be located within the phone. The warrant contained a general statement of various files within the phone and general categories within the phone. The tremendous storage capacities require limits on the search warrant through the particularity requirement.

Defendant argued Agent Camacho's affidavit failed to establish the requisite nexus between the place searched, i.e. the cell phone, and his investigation of drugs

22

and firearms, and, thus, the warrant failed to satisfy the statutory and constitutional requirement for particularity: "The affidavit in this case is silent regarding any connection between the accused's cell phone [or cell phone use] and the drug and weapon offenses for which probable cause may have been shown." Defendant also asserted that the search warrant was unconstitutionally overbroad because it did not limit the dates of videos or communications for homicide to October 5-7, 2017, of files to be searched, but rather "authorized a general rummaging into a very large area of defendant's private things and resulted in an invasion of privacy interests not intended by the magistrate to be invaded."

The search warrant listed the brand and serial number of Long's cell phone. The physical place to be searched was this lump of metal formed into Long's cell phone. Software extraction by Viselli and search of the cell phone itself produced no video or pictures in that place. When Viselli completed this task, the search of Long's cell phone was completed, and the warrant did not particularly identify remote storage or other memory files that could be accessed in a search outside of the data stored locally in Long's phone.

The requirement for particularity of the place actually searched, files in Google's control, is illustrated in the case of U.S. v. Alberts, 721 F. 2d 636, 639 (8th Cir. 1983), where the warrant stated that "certain large green garbage bags" were believed to be located at the residence of Linda Alberts Thompson. Id. At

--

638. Bags were ultimately found and seized at residence of another. The Court found nothing in the warrant would support searching the second residence.

In the present case with electronics rather than physical properties, the phone is the equivalent of a place. The remote storage in the cloud is reached by going outside the cell phone and gaining access through the internet. Like Alberts, the third-party server housed in California is akin to another residence that was not listed with particularity in the search warrant for Long's phone.

The warrant did not list particularly the thing to be searched, video from Long's house in the investigation of Smith's death. If the thing to be seized was described with particularity and a temporal limitation placed on the relevant time frame, the warrant would not fail for being overbroad and lacking particularity.

## SEARCH OUTSIDE THE SCOPE OF THE SEARCH WARRANT

The scope of a search under a warrant is generally defined by its express object. Florida v. Jimeno, 500 U.S. 248 (1991). In addition, the nature of the cause under investigation must be considered in determining whether the warrant adequately guided the search conducted. U.S. v. Weinstein, 762 F. 2d 1522 (11th Cir. 1985), opinion modified on other grounds on denial of reh'g. U.S. v. Weinstein, 778 F. 2d 673 (11th Cir. 1985). In Dalia v. United States, 441 U.S. 238

(1979), the Supreme Court instructed that the manner in which a warrant is executed is subjected to later view as to the reasonableness.

Bowman stated the search of Long's cellular phone was related to Smith's death to examine the other end of text conversation from the deceased's phone to Long's cell phone on October 5, 2017, asking for someone to open the door; and any pictures or video of the deceased in Long's home, consuming drugs or sitting in a chair in Long's residence on October 5-6, 2017. (H 642).

Agent Darin Viselli stated he followed the police policy to preserve evidence and ensure the phone is on airplane mode when in police evidence. Therefore, the searched phone would be unable to access the internet and avoid remote memory swipe. Viselli was the digital forensics examiner and executed the warrant with Cellebrite cellphone software that extracts and copies all cell phone contents. The content stored and copied from inside Long's phone did not reveal pictures or videos. (H 643, 654). The two videos were not located on or in the phone,

The following day, Detective Bowman conducted a manual search of Long's phone and conducted a further search when he tapped on the Google Drive video. Accessing video from cloud or Google drive by Detective Bowman, exceeded the permitted search terms of the warrant. The warrant only permitted search of pictures or videos on or in the phone. Bowman searched Google Drive, a remote memory

25

storage device, with access through the internet, to locate two videos. When Bowman connected to the internet in his manual search of the phone, he went outside and beyond the already removed contents in the phone. Any video or information that has not been downloaded to the phone and can be accessed by other computers or locations through an internet connection, the video or information accessed is not on or in the phone. To access the software used in Google Drive, an internet connection is necessary, and the videos retrieved from Google Drive were not located locally in the phone but located and stored in the cloud.

In addition, the two videos searched and downloaded to Long's phone by Bowman were created on July 23rd and August 21st, 2017. The date was in the file name and the stated dates of interest in Bowman's search was October 5-6, 2017. These videos did not relate to these dates and were not located or stored on or in Long's cellular phone, as required by the explicit language of the search warrant.

## GOOD FAITH EXCEPTION NOT APPLICABLE

In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court created an exception to the exclusionary rule for evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." Id. at 905. Under this good faith exception, suppression is appropriate only if " 'a reasonably well-trained officer would have known that the search was illegal despite the

26

magistrate's decision.' " <u>United States v. Helton</u>, 314 F.3d 812, 824 (6th Cir. 2003)

(quoting <u>Leon</u>, 468 U.S. at 923 n.23). The <u>Leon</u> Court identified four

circumstances when an officer's reliance on the magistrate's decision would not be

objectively reasonable:

> (1) if the issuing magistrate was misled by information in
> an affidavit that the affiant knew was false or would have
> known was false except for his reckless disregard of the
> truth; (2) if the issuing magistrate failed to act in a neutral
> and detached fashion and merely served as a rubber
> stamp for the police; (3) if the affidavit was so lacking in
> indicia of probable cause as to render official belief in its
> existence entirely unreasonable, or where the warrant
> application was supported by nothing more than a bare
> bones affidavit; and (4) if the warrant was facially
> deficient in that it failed to particularize the place to be
> searched or the things to be seized.

In addition to the insufficient particularity of the search warrant for Long's

phone, Leon is inapplicable in the present case. Fourth Amendment violations

relating to execution of the warrant are unaffected by Leon, as is indicated by the

majority's caution that its discussion "assumes, of course, that the officers properly

executed the warrant and searched only those places for those objects that it was

reasonable to believe were covered by the warrant." In <u>United States v. Angelos,</u>

433 F. 3d 738 (10th Cir. 2006), the court held where police failed to comply with

search warrant's limitation as to specific part of the premises to be searched, "it is

27

apparent that the problem lies in the execution" and thus <u>Leon</u> not applicable.    In

<u>Garrison v. State</u>, 494 A. 2d 193 (1985), another similar case the court held Leon is

of no help to the prosecutors when officers executing the search warrant exceeded

the scope of the warrant by searching an apartment other than the one named in the

warrant, which precisely and unambiguously described the premises to be searched.

Detective Bowman was a seventeen-year veteran, familiar with the

requirements to obtain a search warrant to access information stored in remote

storage in the cloud and housed on third-party servers and the requirement under

Florida law.  During his manual search, Bowman had to violate company policy and

turn the phone off airplane mode to access the internet and search for video outside

the phone.  Even during the unreasonable search of Long's Google Drive account,

Bowman specifically identified the scope of the search to be the dates relevant to

Mrs. Smith's overdose death, October 5-7, 2017, but gathered video titled with a

creation date outside that window.    The Good Faith exception in Leon is

inapplicable when the police exceed the scope of the warrant in its execution.

## GOOGLE SEARCH WARRANT

It is axiomatic that evidence resulting from an illegal search cannot be the

basis of probable cause supporting a subsequent search warrant. See <u>State v.</u>

<u>Morsman</u>, 394 So.2d 408, 410 (Fla.1981) (citing <u>Purcell v. State</u>, 325 So.2d 83 (Fla.

1st DCA 1976). The search warrant for Long's cell phone violated the particularity

requirement and the search and seizure of the video evidence was unlawful and must be suppressed as fruit of the poisonous tree. Also, the resulting conversation with J.P. is fruit of the poisonous tree to be excluded. The remaining facts within the affidavit do not amount to probable cause and lack particularity.

In State v. Rabb, 920 So. 2d 1175 (Fla. 4th DCA), affirmed, -- US --, (2013). The Fourth District held that a dog sniff at the outside of a residence based only on anonymous tip violated the Fourth Amendment; evidence resulting from the illegal search could not be used to establish probable cause for a subsequent warrant request. 920 So. 2d at 1187-88. The Fourth District then analyzed whether the probable-cause affidavit, without the evidence, contained sufficient "independent and lawfully obtained evidence that established probable cause." Id. At 1188.

The search and seizure of the two videos constituted an unreasonable and illegal search, we must consider whether any independent and lawfully obtained evidence establishes a substantial basis for concluding that probable cause existed to support the issuance of a search warrant for Long's accounts with Google. See State v. Hunwick, 434 So.2d 1000, 1001 (Fla. 4th DCA 1983) ("The inclusion of illegally obtained evidence in the supporting affidavit, where the affidavit contains other valid allegations sufficient to establish probable cause, does not invalidate a search warrant. The trial court's duty is to excise the invalid allegations and

determine whether the independent and lawfully obtained information demonstrates probable cause.") (internal citations omitted).

The probable cause affidavit submitted with Google listed two other bases for probable cause: the information of a heroin dealer provided by the anonymous source in January, 2017, was unverified and was not corroborated by any surveillance of the house;  the evidence of texts, emails and videos related to Lori Smith's homicide was retrieved in the cell phone search.   The controlled substances found in Long's home on October 7, 2017, and in the search of his home did not establish a fair probability that evidence of illegal activity would be in Long's Google Drive.   Without the two videos admitted, there would be no discussion with J.P., and no independent evidence establishing probable cause to issue the Google search warrant.   The remainder of the affidavit lacked enough facts to establish probable cause to that a crime occurred and there was a nexus that evidence would be located in Long's Google accounts or remote storage.

Under the totality of the circumstances, the unverified and uncorroborated anonymous tip nor finding of controlled substances on Long's person and in his home do not amount to probable cause to justify the Google Search Warrant. Therefore, the issuance of the search warrant for the Gmail account was error, because the warrant was tainted by the illegal search of the two videos with no

30

independent and lawfully obtained evidence that established probable cause to support the issuance of a search warrant on the requested dated. Consequently, the evidence obtained from the search of Long's phone was "fruit of the poisonous tree" subject to suppression by the trial court. Wong Sun v. United States, 371 U.S. 471, 484-485, (1963).

31

## ISSUE II

THE TRIAL COURT ERRED TO ADMIT COLLATERAL CRIME EVIDENCE AND DENY THE MOTION FOR MISTRIAL WHEN THE WILLIAMS RULE EVIDENCE BECAME A FEATURE OF THE TRIAL.

The trial court admitted the August 21, 2017, video as Williams Rule Evidence under Florida Statute 90.404 (2)(a) and (2) (c). Long challenges the admissibility of this collateral crime evidence and denial of the motion for mistrial when the collateral crime evidence became a feature of the trial. (R 499; T 93, 137, 191-195). The Williams Rule video was fifty minutes in length, compared to the two-minute video in the charged offense. The video of the charged offense was admitted and published once for jurors. (T 79-81). J.P. admitted on cross there was no gun or threats in the July 23, 2017, video. (T 85). The second video involved a disagreement between Long and J.P. and included a verbal assault or threats issued at J.P. (T 86).

In Padgett v. State, 551 So.2d 1259 (Fla. 5th DCA 1989), the victim testified that her father solicited sexual intercourse with her while they were driving in his truck and then later while they were alone together in the family home. The victim also testified as to several prior incidents of sexual encounters with the defendant, which occurred both in the home and in the motor van. In reviewing the

32

admissibility of the victim's testimony, the Fifth District recognized that "testimony as to prior, uncharged sexual assaults by the defendant was not admissible to corroborate her own testimony because corroboration should come from an independent source." Padgett, 551 So.2d at 1260. The court, nonetheless, concluded that the evidence was admissible to show both the existence of a relationship between the defendant and the victim and the fact that the charged crime was not an isolated incident. *See* id. at 1262.  There was no independent source, outside of the video,  to corroborate J.P.'s testimony.

Similarly, in Sampson v. State, 541 So.2d 733 (Fla. 1st DCA 1989), the victim testified as to the details of the offenses committed against her and described other prior instances of sexual contact by the defendant. The First District, while questioning whether the victim's testimony as to prior sexual attacks by the defendant was admissible to corroborate her testimony as to the charged offense, nonetheless held that the evidence was admissible to show intent, motive, and absence of mistake. See id. at 735.

Even if collateral crime evidence is relevant, a trial court may not permit the evidence to become an impermissible feature of the trial.  Durousseau v. State, 55 So.3d 543 (2010).  Collateral crime evidence of the second video tape became a feature of the trial. Appellant contends the trial court erred to deny the motion for mistrial when the collateral crime evidence and second video tape of Williams rule

evidence admitted became a feature of the trial. The second video of the August 21, 2017, bedroom incident was admitted over objection and published twice to jurors. (T 93, 137). In closing argument, the prosecutor continued to reference the collateral crime video and the prosecutor again played the second video. (T 191-195). The trial court erred to deny the motion for mistrial, when the more egregious second video tape was played three times for jurors.

# EXHIBIT B

IN THE CIRCUIT/ COUNTY COURT OF THE FIFTH JUDICIAL CIRCUIT,
IN AND FOR THE COUNTY OF MARION,
STATE OF FLORIDA

2017 OCT 17 PM 4:05

# SEARCH WARRANT

STATE OF FLORIDA

COUNTY OF MARION

IN THE NAME OF THE STATE OF FLORIDA, TO ALL AND SINGULAR, THE POLICE CHIEF OF THE OCALA POLICE DEPARTMENT, OR HIS SWORN POLICE OFFICERS, THE SHERIFF AND/OR DEPUTY SHERIFFS OF MARION COUNTY, STATE ATTORNEY INVESTIGATORS, AND ALL OTHER AUTHORIZED OFFICERS:

WHEREAS, complaint on oath and in writing supported by affidavit by a creditable witness has been made before the undersigned Circuit Judge of Marion County, Florida, and,

WHEREAS, said facts made known to me have caused me to certify and find that there is probable cause to believe that the laws of the State of Florida have been violated within the item known and described as follows:

The item to be searched is housed and secured within the Ocala Police Department, 402 S Pine Ave., Ocala, Marion County, Florida, 34471.

The item to be searched is a black Samsung model: SM-J320V, cellular telephone IMEI: 355076080577068

Search to include the black Samsung model: SM-J320V, cellular telephone IMEI: 355076080577068 suspected to be involved or connected with an investigation of drug, weapons and homicide crimes.

AND the facts tending to establish grounds for search are set forth in an affidavit of Agent L. Camacho, who states:

Based upon the information set forth in the affidavit, your Affiant believes that significant probable cause has been set forth to show that the laws of the State of Florida, the the laws against the Florida Comprehensive Drug Abuse Prevention and Control Act, FSS Chapter 893 and FSS 790 Weapons & Firearms, and FSS 782.04 Homicide, have been violated and are being violated and the item described





above contains evidence thereof, therefore your Affiant requests the issuance of a search warrant.

NOW, THEREFORE, you or either of you with lawful assistance as may be necessary, are hereby commanded in the daytime or the nighttime or on Sunday to enter the said premises and then and there to search diligently for **DATA CONTAINED ON/IN THE CELLULAR TELEPHONE INCLUDING BUT NOT LIMITED TO: INBOUND AND OUTBOUND CALL DATA, TEXT MESSAGES, ALL CONTACTS, CONTACT LIST(S), PICTURES, VIDEOS, MOBILE APPLICATION DATA, PHONE DATA AND SD CARD DATA PERTAINING TO VIOLATIONS OF FLORIDA STATE STATUTE CHAPTER 893, FLORIDA COMPREHENSIVE DRUG ABUSE PREVENTION AND CONTROL ACT, FLORIDA STATE STATUTE 790, WEAPONS AND FIREARMS, AND FLORIDA STATE STATUTE 782.04, HOMICIDE.**

described in this warrant, and if the same or any part thereof be found on said item, you are hereby authorized to seize and secure the same and to make return of your doings under this warrant to the undersigned within ten days from the date hereof, and you are likewise commanded in the event you seize or take any data mentioned in this warrant to safely keep the receipts for said data and deliver a copy of this warrant to the person from whom taken or place where said data was found.

WITNESS MY HAND and official seal this 11th day of October, 20 17.



(SEAL)

CIRCUIT COURT JUDGE

Willard Pope

2017001958912-

## SEARCH WARRANT INVENTORY AND RETURN

RECEIVED this search warrant on the 11 day of October A.D. 2017, and executed on the 12 day of October A.D. 2017 at 5:00 P.M. by delivering a true copy of thereof to the Samsung cellular phone and at time showing Samsung cellular phone this original search warrant and reading same to the Samsung cellular phone and explaining to the Samsung cellular phone the contents thereof, and by making a diligent search as herein directed, upon which found:

Using Cellebrite Forensics a copy of the digital contents of the Samsung phone was made. The digital files include data contained on/in the cellular telephone including but not limited to: Inbound and Outbound call data, Text messages all contacts, contact lists, pictures, videos, mobile application data, phone data and SD card data.

I, Detective Bowman, the officer by whom this warrant was executed do swear that the above inventory contains a true and detailed account of all the property taken by me on said warrant.

~signature~

Executing Officers Signature

Sworn to and subscribed before me this 17 day of 10 A.D. 20 17

~signature~

Witness/Certified Police Officer

Page 305

2017 DCT 17 PM 4:05

45

---

17538476
42-2017-CF-003666-CFAX-XX
42-2017-CF-003666-CFAX-XX PLAINTIFF 4
Copy of Affidavit for Search Warrant and Search \

MARKED FOR IDENTIFICATION as ___D___
~signature~ Stokes    Exhibit Number
DAVID R. ELLSPERMANN    D
Clerk of the Circuit Court and Comptroller
Marion County, Florida

By ___Kavara D___    D.C.

STATE OF FLORIDA
VS.

David Long
17-3666- CF-A

FILED IN EVIDENCE as ___4___
~signature~    Exhibit Number
DAVID R. ELLSPERMANN    4
Clerk of the Circuit Court and Comptroller
Marion County, Florida

By ___Arielle___    D.C.

Page 306

Ocala Police Department    Major Crimes Unit    2017001935892

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT,
IN AND FOR THE COUNTY OF MARION,
STATE OF FLORIDA

**SEARCH WARRANT**    ORIGINAL

STATE OF FLORIDA
COUNTY OF MARION

IN THE NAME OF THE STATE OF FLORIDA, TO ALL AND SINGULAR THE OCALA POLICE DEPARTMENT OFFICERS, THE SHERIFF AND/OR DEPUTY SHERIFF OF MARION COUNTY AND ALL OTHER AUTHORIZED OFFICERS:

*WHEREAS*, complaint on oath and in writing supported by affidavit by Detective Michael Bowman, ID 3055, has been made through electronic service to the undersigned County/Circuit Judge of Marion County, Florida and

*WHEREAS*, said facts made known to me have caused me to certify and find that there is probable cause to believe that the laws of the State of Florida, to-wit: the laws against HOMICIDE, FLORIDA COMPREHENSIVE DRUG ABUSE PREVENTION AND CONTROL ACT, AND SEXUAL BATTERY, in violation of Florida State Statutes 782.04(1)(6)(5), 893, 794.011(5) have been violated, and evidence relative to proving said HOMICIDE, FLORIDA COMPREHENSIVE DRUG ABUSE PREVENTION AND CONTROL ACT, AND SEXUAL BATTERY has been committed, may be located at the below-described premises:

GOOGLE LEGAL INVESTIGATIONS SUPPORT
1600 AMPHITHEATRE PARKWAY
MOUNTAIN VIEW, CA. 94043

And "This (subpoena, order, warrant) is issued pursuant to Florida Statute s. 92.605. A response is due within 20 business days of receipt of this (subpoena, order, warrant), unless a longer time period is stated herein."

AND the facts tending to establish the grounds for search are set forth in an affidavit of the affiant Detective Michael Bowman.

The Scope of the search is to include the listed Google Drive digital/electronic information storage, and photo storage services, to its customers in which they reserve and/or maintain computer disk storage

---

Ocala Police Department    Major Crimes Unit    2017001935892    ORIGINAL

space on their own computer system servers for the use of the communication subscriber/customer/users associated with their company. Items contained on this previously mentioned storage space can include electronic communications (commonly known as e-mail or text messages) between subscriber(s) and other parties, graphic image and/or text files, file transfer protocol logs, internet protocol logs (IP logs), programs and other types of data or information stored in electronic form(s). Services, such as, Google Drive, also maintain records pertaining to the individuals and/or other users who have subscriber accounts with their company.

NOW, THEREFORE, you or either of you, with lawful assistance by representatives of Google Drive as may be necessary are hereby commanded in daytime or in the night time or on Sunday to enter the said premise and then in there to search diligently for said property described.

At said place you shall search for and, if same be found, seize and bring before me the property described in the affidavit, to-wit:

**Google Drive ID's #**

NEVRHALFASS9@GMAIL.COM
PROFESSOR2328@GMAIL.COM

1. Any Stored Multimedia files (pictures and/or video) created, backed up or deleted between JANUARY 1, 2017 and OCTOBER 07, 2017.

2. Any subscriber information identifying ownership of the accounts and IP access history from JANUARY 1, 2017 to OCTOBER 07, 2017.

And if the same or any part thereof be found on said electronic device, you are hereby authorized to seize and secure the same, and to make return of your doings under this warrant to the undersigned within ten (10) days hereof, and you are likewise commanded in the event you seize or take property or materials mentioned in this warrant to safely keep the same until otherwise ordered by a court having jurisdiction thereof, and that you give proper receipts for said property and deliver a copy of this warrant to the person from whom taken or in whose possession it is found or in the absence of any such person to leave said copy in the place where said property or material was found.

WITNESS MY HAND and official seal this 25 day of OCTOBER, 2017.

_____
County/Circuit Judge

# EXHIBIT C

## Arrest Affidavit / First Appearance Form      ORIGINAL

| OBTS Number: 420316277 | | Agency ORI: FL0420000 | | |
|---|---|---|---|---|

| Court Case Number: 19CF1300Y | Arrest Code: | Agency Case Number: 19009185 |
|---|---|---|

| Name (LFM): POTTER JESSICA ANN | DOB: 12/22/1994 | F | W | 507 | 130 | BRO | BRO |
|---|---|---|---|---|---|---|---|

| Mailing Address: | Scars Marks Tattoos: |
|---|---|
| 8010 SE 131ST PL, SUMMERFIELD, FL 34491 | |

| Street Address: | Phone: | POB: SUMMERFIELD,FL |
|---|---|---|
| 8010 SE 131ST PL, SUMMERFIELD, FL 34491 | Alias: | |

| POE: | POE Phone: | | SSN: |
|---|---|---|---|
| | Occupation: NOT EMPLOYED | | |
| | Veh Towed By: | | Veh Held: |

| DL Number: P360421949620 | DL ST: FL | Veh Hold Agency: | |
|---|---|---|---|
| Arrest Suffix: 1 | | Arrest Date: 04/04/2019 | Arrest Time: 12:13 |
| Arrest Location: | | Citizen: US | Residence: |

### CHARGES

| Description | GOC | WAR | DOM | Counts | Activity | Type | NCIC | CIS | Statute | Bond Amount (Each) | Bond Sched |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DRUGS-POSSESS-CNTRL SUB WO PRESCRIPTION (FELONY) 11.5 GRAMS METHAMPHETAMINES | | | N | 1 | | | | | 893.13-6A | $2,000.00 | N |
| DRUGS-POSSESS-CNTRL SUB WO PRESCRIPTION (FELONY) HEROIN 1 GRAM | | | N | 1 | | | | | 893.13-6A | $2,000.00 | N |
| DRUGS-POSSESS-CNTRL SUB WO PRESCRIPTION (FELONY) ALPRAZOLAN 10 PILLS | | | N | 1 | | | | | 893.13-6A | $2,000.00 | N |
| MARIJUANA-POSSESS-NOT MORE THAN 20 GRAMS 3 GRAMS | | | N | 1 | | | | | 893.13-6B | $1,000.00 | N |
| DRUG EQUIP-POSSESS AND OR USE | | | N | 1 | | | | | 893.147-1 | $1,000.00 | N |

Indication of:

Alcohol:        Drug:        Weapons Seized:        Weapon:                Juvenile Disposition:

| Jail Log: (To be completed by booking officer) | | | Jail Inmate #: | |
|---|---|---|---|---|
| Date Booked: 4.4.19 | Time Booked: 2010 | Booking Officer: 7855 | Fingerprinted By: 60085 | |
| Photographed by: 60085 | Bin Number: | Advised of Rights By: Adwisee | | |
| Check for Warrants:  ☐NCIC  ☑FCIC  ☑Local | Holds: ☐Yes  ☐No | Agency of Hold: | | |
| Attorney (if known): none | Religion: none | Marital Status: ☒S ☐M ☐D ☐Sep | | |
| Telephone call logged:  Time          AM          PM          #( Atlavel | | | | |
| Next of Kin: Tara Matara | | Relation: | Relation Phone: | |
| Relation Address: | | | | |

| Bond Date: | Returnable Court Date: | Returnable Court Time: | Release Date: |
|---|---|---|---|
| Release Time: | Releasing Officer: | Bond, Charge A: | Charge B: |
| Charge C: | Charge D: | Charge E: | Bond Type: ☐ROR  ☐Surety ☐Cash |
| Name Address of Bondsman: | | | ☐Bail Bond  ☐Cert  ☐Other |

Approving Officer Signature:

JMS-226 v1.16          Page: 1 of 3          Printed: 4/4/2019 15:46

# ORIGINAL

| Arrest Code: | Court Case Number: | Agency Case Number: 19009185 |
|---|---|---|

| Defendant Name: POTTER JESSICA ANN | DOB: 12/22/1994 |
|---|---|

**PROBABLE CAUSE AFFIDAVIT:**
(Specify probable cause for each charge)

Before Me, the undersigned authority personally appeared ___J. LAVERY___

who being duly sworn, alleges, on information and belief, that on the __4__ day of __April__ __19__

in Marion County, Florida the defendant did:

ON 4/4/2019 THE MARION COUNTY SHERIFF'S OFFICE WAS WORKING AN UNDERCOVER RETAIL THEFT OPERATION AT WALMART LOCATED AT 17961 S US HWY 441, SUMMERFIELD, FL. DURING THE COURSE OF THE DETAIL, LOSS PREVENTION OFFICER/EYE WITNESS ROSSE VALASQUEZOBSERVED THE DEFENDANT, JESSICA ANN POTTER, DISPLAYING SUSPICIOUS BEHAVIOR IN THE STORE. LOSS PREVENTION OFFICER/EYE WITNESS ROSSE VALASQUEZ, FOLLOWED THE DEFENDANT AND OBSERVED HER PLACE SEVERAL GROCERIES ITEMS INTO HER CART. THE DEFENDANT THEN ATTEMPTED TO EXIT PAST ALL POINTS OF SALE WITHOUT PAYING FOR THE MERCHANDISE. THE DEFENDANT WAS DETAINED BY LOSS PREVENTION AND UNDERCOVER DETECTIVES AT THE STORE. UPON MAKING CONTACT WITH THE DEFENDANT MULTIPLE FOOD ITEMS THAT WERE NOT PAID FOR WERE LOCATED IN HER POSSESSION. THE TOTAL OF STOLEN ITEMS WERE VALUED AT $212.19. WHILE BEING DETAINED THE DEFENDANT ATTEMPTED TO PULL AWAY MULTIPLE TIMES FROM DEPUTIES WHILE THEY ATTEMPTED TO PLACE WRIST RESTRAINTS ON HER. THE DEFENDANT WAS THEN TRANSPORTED TO THE SOUTH MULTI DISTRICT OFFICE FOR AN INTERVIEW TO BE CONDUCTED.

AFTER BEING TAKEN INTO CUSTODY THE DEFENDANT WAS SEARCHED PRIOR TO ARREST. THE DEFENDANT WAS CARRYING A GRAY PURSE AT THE TIME OF ARREST. IN THE PURSE MULTIPLE ILLEGAL NARCOTICS WERE LOCATING. 11.5 GRAMS OF METHAMPHETAMINES, 3 GRAMS OF MARIJUANA, 1 GRAM OF HEROIN. ALL OF THE LISTED NARCOTICS TESTED POSITIVE USING THE PROPER TEST KITS. ALSO LOCATED WERE 4 WHITE RECTANGLE PILLS WITH G3722 ENGRAVED ON THEM AND 6 GREEN RECTANGLE PILLS WITH S903 ENGRAVED ON THEM. A SEARCH ON DRUGS.COM REVEALED THAT BOTH TYPES OF PILLS WERE ALPRAZOLAM. ALL OF THE LISTED NARCOTICS WERE PACKAGED IN SMALL CLEAR PLASTIC BAGS. A BUNDLE OF EMPTY CLEAR PLASTIC BAGS WERE ALSO WITH THE OTHER NARCOTICS.

DETECTIVE T. TUCKER 1344, ATTEMPTED TO CONDUCT A RECORDED POST MIRANDA INTERVIEW WITH THE DEFENDANT. THE DEFENDANT STATED SHE HAS AN ADDICTION TO HEROIN AND THAT THE HEROIN WAS HERS. WHEN THE DEFENDANT WAS ASKED ABOUT THE OTHER NARCOTICS SHE ADVISED THAT SHE DID NOT WANT TO SPEAK ANY FURTHER.

THE DEFENDANT WAS TRANSPORTED TO THE MARION COUNTY JAIL BY DEPUTY CHRISTMAS, ID 5750.

SWORN to and SUBSCRIBED before me

this __4__ day of __April__ __19__

_____
Notary Public - Certified Officer
(circle one)

_____
AFFIANT

MARION COUNTY SHERIFF'S OFFICE

_____
Arresting Agency

SEAL

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
OF THE STATE OF FLORIDA, IN AND FOR MARION COUNTY

THE STATE OF FLORIDA            CASE NO. 2019-CF-001300-A-Y

vs                              **INFORMATION**

JESSICA ANN POTTER

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF FLORIDA:

BRAD KING, State Attorney of the Fifth Judicial Circuit of the State of Florida, in and for Marion
County prosecuting for the State of Florida, by and through the undersigned Assistant State Attorney, in
the said County, under oath, information makes that: JESSICA ANN POTTER (R/G: W/F, DOB:
12/22/1994) in the County of Marion, and the State of Florida, on or about the 4th day of April in the year
of Our Lord, twenty-nineteen:

## COUNT I
### POSSESSION OF METHAMPHETAMINE (F3)
893.13(6)(a) and 893.03(2)(c)

did unlawfully and knowingly have in her actual or constructive possession a controlled substance,
to-wit: Methamphetamine, in violation of Florida Statutes 893.13(6)(a) and 893.03(2)(c)(5);

## COUNT II
### POSSESSION OF HEROIN (F3)
893.13(6)(a) and 893.03(1)(b)(11)

and the Assistant State Attorney upon her oath aforesaid, further information makes that JESSICA
ANN POTTER (R/G: W/F, DOB: 12/22/1994) in the County of Marion, and the State of Florida, on
or about the 4th day of April in the year of Our Lord, twenty-nineteen, in the County and State
aforesaid did unlawfully have in her actual or constructive possession a controlled substance, to-wit:
Heroin, in violation of Florida Statutes 893.13(6)(a) and 893.03(1)(b)(11) ;

## COUNT III
### POSSESSION OF ALPRAZOLAM (F3)
893.13(6)(a) AND 893.03(4)(b)(2)

and the Assistant State Attorney upon her oath aforesaid, further information makes that JESSICA
ANN POTTER (R/G: W/F, DOB: 12/22/1994) in the County of Marion, and the State of Florida, on
or about the 4th day of April in the year of Our Lord, twenty-nineteen, in the County and State
aforesaid did knowingly and unlawfully have in her actual or constructive possession a controlled
substance, to-wit: Alprazolam, in violation of Florida Statutes 893.13(6)(a) and 893.03(4)(b)(2);

M-2019-16410

PAGE 2
STATE OF FLORIDA
VS
JESSICA ANN POTTER
2019-CF-001300-A-Y

### COUNT IV
### FELONY PETIT THEFT (F3)
812.014(1) and 812.014(3)(C)

and the Assistant State Attorney upon her oath aforesaid, further information makes that JESSICA ANN POTTER (R/G: W/F, DOB: 12/22/1994) in the County of Marion, and the State of Florida, on or about the 4th day of April in the year of Our Lord, twenty-nineteen, in the County and State aforesaid did unlawfully and feloniously obtain or use, or endeavor to obtain or use the property of WALMART, to-wit: Food Items and Cosmetic Items, of the value of less than three hundred dollars ($300.00), with the intent to either temporarily or permanently deprive WALMART of a right to the property or a benefit thereof, or did appropriate the said property to her own use or the use of any person not entitled thereto, in violation of Florida Statute 812.014(1), and having previously been convicted of two or more offenses of any theft on 02/11/2014 and 11/18/2013, in violation of Florida Statute 812.014(3)(c);

### COUNT V
### POSSESSION OF CANNABIS - 20 GRAMS OR LESS (M1)
893.13(6)(a) and 893.13(6)(b) and 893.03(1)(c)(7)

and the Assistant State Attorney upon her oath aforesaid, further information makes that JESSICA ANN POTTER (R/G: W/F, DOB: 12/22/1994) in the County of Marion, and the State of Florida, on or about the 4th day of April in the year of Our Lord, twenty-nineteen, in the County and State aforesaid did unlawfully and knowingly have in her actual or constructive possession a controlled substance, to-wit: Cannabis, commonly referred to as Marijuana, in an amount of twenty grams or less, in violation of Florida Statutes 893.13(6)(a), 893.13(6)(b) and 893.03(1)(c)(7);

### COUNT VI
### POSSESSION OF PARAPHERNALIA (M1)
893.145 and 893.147

and the Assistant State Attorney upon her oath aforesaid, further information makes that JESSICA ANN POTTER (R/G: W/F, DOB: 12/22/1994) in the County of Marion, and the State of Florida, on or about the 4th day of April in the year of Our Lord, twenty-nineteen, in the County and State aforesaid did unlawfully and knowingly have in her actual or constructive possession with intent to use, or did unlawfully and knowingly use, an object intended or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, transporting, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, to-wit: Heroin, said object or objects being a Rubber Tourniquet Band, in violation of Florida Statutes 893.145 and 893.147 ;

M-2019-16410

PAGE 3
STATE OF FLORIDA
VS
JESSICA ANN POTTER
2019-CF-001300-A-Y

## COUNT VII
### RESIST LAW ENFORCEMENT OFFICER W/OUT VIOLENCE (M1)
843.02

and the Assistant State Attorney upon her oath aforesaid, further information makes that JESSICA ANN POTTER (R/G: W/F, DOB: 12/22/1994) in the County of Marion, and the State of Florida, on or about the 4th day of April in the year of Our Lord, twenty-nineteen, in the County and State aforesaid did unlawfully resist, obstruct or oppose Deputy Sergeant Jefferson Lavery, who was then and there in the lawful execution of a legal duty, or execution of legal process, to-wit: Detention, without offering or doing violence to the person of such officer, in violation of Florida Statute 843.02;

contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Florida.

STATE OF FLORIDA, COUNTY OF MARION

Personally appeared before me, BRAD KING, State Attorney for the Fifth Judicial Circuit, State of Florida, in and for Marion County, State of Florida, or his duly designated Assistant State Attorney, who first being sworn, says that the allegations as set forth in the foregoing information are based upon facts that have been sworn to as true, and which if true, would constitute the offense therein charged. Prosecution instituted in good faith and subscribed under oath, certifying he has received testimony under oath from the material witness or witnesses of the offense.



ADYLIA BADILLO
Commission # FF 991662
Expires June 5, 2020
Bonded Thru Troy Fain Insurance 800-385-7019

Nicole M Munroe, Assistant to BRAD KING State Attorney,
Fifth Judicial Circuit of Florida
Florida Bar No. 0104961

Sworn to and subscribed before me this 6 day of May , 2019.

Affiant Personally Known to Notary Public

M-2019-16410

## FLORIDA DEPARTMENT OF CORRECTIONS
### 2nd ADDENDUM TO VIOLATION REPORT DATED 2/14/2020

☐ REPORT CONTAINS CONFIDENTIAL INFORMATION

Date: 2/1/2021                    ☐ MANDATORY RETAKING FROM: _____

To:   Honorable Gary L. Sanders          From:   Reginald Christie
Name:   Jessica Ann Potter               DC No:  U50286      Circuit:  Fifth
                                                 42-2019-CF-001300-AX/
Case No:   19CF001300/ 18CF004723        UC No:  42-2018-CF-004723-AX
Scheduled Termination Date:   11/24/2024

### REQUESTING

☐ Violation of Probation       ☐ Warrant for Arrest       ☐ Violation of Probation       ☒ No further action
Hearing-Warrantless            (Violation of Probation)   Hearing without Warrant-        (VOP Warrant
Arrest Conducted                                          (Notice to Appear)              already served)

### TYPE OF REPORT

☐ Non-Compliance with Conditions        ☒ Arrest/New Charge          ☐ Warrantless Arrest
☐ Delinquent Monetary Obligations Only

### LOCATION

☐ At Large                                                     MCCC – CRIMINAL
☒ In Custody                                                   FEB 18 '21 PM3:40
☐ On Bond              Current Address          Marion County Jail
☐ ROR                                           700 NW 30th Ave
☐ Absconder                                     Ocala, FL 34475

(1)   **HOW VIOLATION OCCURRED:** Violation of Condition (5) of the Order of Probation, by failing to live without
violating any law by committing the criminal offense of Ct I Resist Officer-Obstruct without violence on 1/27/2021, in
Marion County, Florida, and as grounds for belief that the offender violated her probation, Officer Reginald Christie states
that the offender was arrested on 1/27/2021, for the said offense  by the Marion County Sheriff's Office, as told to Officer
Reginald Christie by the Marion County Sheriff's arrest report.

Violation of Condition (5) of the Order of Probation, by failing to live without violating any law by committing the
criminal offense of Ct II Escape on 1/27/2021, in Marion County, Florida, and as grounds for belief that the offender
violated her probation, Officer Reginald Christie states that the offender was arrested on 1/27/2021, for the said offense  by
the Marion County Sheriff's Office, as told to Officer Reginald Christie by the Marion County Sheriff's arrest report.

Violation of Condition (5) of the Order of Probation, by failing to live without violating any law by committing the
criminal offense of Ct III Battery on Law Enforcement Officer/ Firefighter/ EMT, etc on 1/27/2021, in Marion County,
Florida, and as grounds for belief that the offender violated her probation, Officer Reginald Christie states that the offender
was arrested on 1/27/2021, for the said offense  by the Marion County Sheriff's Office, as told to Officer Reginald Christie
by the Marion County Sheriff's arrest report.

Circumstances: On 1/27/2021, Deputy Luiken responded to the Ocala Regional Medical Center in regard to an
escaped inmate.

Prior to arrival, Deputy Luiken was advised that defendant Jessica Potter had been arrested on 1/25/2021 for felony
warrant for numerous drug charges under case number 422019CF001300A, and the same say had been admitted to
Ocala Regional Medical Center. Due to undisclosed medical issues. The defendant eluded Detention Deputy Johnson
and fled from the hospital attempting to escape custody.

. On Deputy Luiken's arrival, he assisted with the perimeter until the defendant was located in the 400 block of SE 12th Street by Major Bowen. The defendant was captured by the Major and transported by Marion County Fire Rescue.

On the same day Deputy Palau responded to Ocala Regional Medical Center to assist as well. He was with hospital staff obtaining video footage of the escape. He responded to room 2022 and upon his arrival was informed that the defendant had spit on one of the deputies who was assigned to watch her. He made contact with Deputy Smith. She advised the defendant was yelling out and screaming. He defendant who had one harm and leg cuffed tried to slip her cuffs. Due to the defendant's behavior Deputy Smith and Deputy Brown, the second officer assigned to watch the defendant, decided to secure the defendant's other leg, they tried to secure her free hand. The defendant began to resist the deputy's efforts which in turn left part her chest partially exposed. Deputy Smith tried to cover the defendant up and then the defendant said, "Don't touch me" and spit on Deputy Smith. Deputy Smith said the spit landed on her face and on her short. Deputy Brown corroborated Deputy Smith's account of the incident When the incident occurred two nurses were in the room, both of which corroborated the incident.

(2)   **OFFENDER'S STATEMENT:** No statement obtained due to the offender's incarceration.

(3)   **HISTORY OF SUPERVISION:** ☐ ADJUDICATION WITHHELD   ☒ ADJUDICATED

### Current Community Supervision History

| Offense Date | Offense | Sentence Date | County | Case Number | Supervision Length |
|---|---|---|---|---|---|
| 04/04/2019 | POSSESS METHAMPHETAMINE | 11/25/2019 | MARION | 1901300 | 005Y 00M |
| 04/04/2019 | HEROIN-POSS. LESS/10 GRAMS | 11/25/2019 | MARION | 1901300 | 005Y 00M |
| 04/04/2019 | POSS.CONTROL. SUBS/OTHER | 11/25/2019 | MARION | 1901300 | 005Y 00M |
| 04/04/2019 | PETIT THEFT/3RD CONVICTION | 11/25/2019 | MARION | 1901300 | 005Y 00M |
| 12/04/2018 | TRAFF HER.,ETC.14-U/28 GR | 11/25/2019 | MARION | 1804723 | 005Y 00M |
| 12/04/2018 | POSSESS METHAMPHETAMINE | 11/25/2019 | MARION | 1804723 | 005Y 00M |
| 12/04/2018 | COCAINE - POSSESSION | 11/25/2019 | MARION | 1804723 | 005Y 00M |
| 12/04/2018 | POSS.CONTROL. SUBS/OTHER | 11/25/2019 | MARION | 1804723 | 005Y 00M |

### Prior Community Supervision History

| Offense Date | Offense | Sentence Date | County | Case Number | Supervision Length |
|---|---|---|---|---|---|
| 06/17/2013 | GRAND THEFT,300 L/5,000 | 11/06/2015 | MARION | 1302328 | 01M 21D |
| 09/30/2013 | POSS.CONTROL. | 11/06/2015 | MARION | 1303265 | 01M 21D |

| | | | | | |
|---|---|---|---|---|---|
| 06/17/2013 | GRAND THEFT,300 L/5,000 | 02/11/2014 | MARION | 1302328 | 003Y 00M |
| 09/30/2013 | POSS.CONTROL. SUBS/OTHER | 02/11/2014 | MARION | 1303265 | 003Y 00M |
| 06/17/2013 | GRAND THEFT,300 L/5,000 | 06/18/2014 | MARION | 1302328 | 003Y 00M |
| 09/30/2013 | POSS.CONTROL. SUBS/OTHER | 06/18/2014 | MARION | 1303265 | 003Y 00M |

**PRIOR VIOLATION OF SUPERVISION:**

| Date of Violation | Type of Violation | Date of Disposition | Disposition of Violation |
|---|---|---|---|
| 04/23/2014 | VIOT-TECHNICAL VIOLATION | 06/18/2014 | REVOKED DUE TO TECHNICAL VIOLATION |
| 05/20/2016 | VIOT-TECHNICAL VIOLATION | 07/29/2016 | COURT/FCOR TERMINATED |
| 02/14/2020 | VIOT-TECHNICAL VIOLATION | | PENDING VIOLATION |

☐ Florida Crime Information Center (FCIC) and National Crime Information Center (NCIC) criminal history record attached. **NOTE: FCIC/NCIC criminal history record information is not public record, pursuant to chapter 119, Florida Statutes.**

**RESIDENCE:** ☐ STABLE     ☐ UNSTABLE     ☒ ABSCONDED
Resides with: The offender was enrolled at Addie Rawls completing inpatient treatment facility. She was unsuccessfully discharged on 2/05/2020. Since 2/05/2020 the offender has not contacted Officer Christie with her new residence. Officer Christie completed the last home verification on 1/02/2020.

**EMPLOYMENT:** ☐ EMPLOYED     ☐ RETIRED/DISABLED     ☐ STUDENT     ☒ UNEMPLOYED
Current Employer/school name and address: N/A
Full-time employment or school attendance: ☐     Part-time employment or school attendance: ☐
Monthly salary or other source of income: N/A

**RESTITUTION:** ☒ N/A     ☐ PAID IN FULL     ☐ COMPLYING     ☐ DELINQUENT
Original Obligation: _____     Current Balance: _____

**COURT COSTS/FINES:** ☐ N/A     ☐ PAID IN FULL     ☐ COMPLYING     ☒ DELINQUENT
Original Obligation: $1,253.00  $1,372.00     Current Balance: $1,253.00  $1,372.00     2018CF4723  2019CF1300

**ELECTRONIC MONITORING:** ☒ N/A     ☐ PAID IN FULL     ☐ COMPLYING     ☐ DELINQUENT
Original Obligation: _____     Current Balance: _____

**COST OF SUPERVISION:** ☐ N/A     ☐ PAID IN FULL     ☐ COMPLYING     ☒ DELINQUENT
Original Obligation: $3,000.00     Current Balance: $3,000.00

**PUBLIC SERVICE WORK:** ☐ N/A     ☐ COMPLETED     ☐ COMPLYING     ☒ DELINQUENT
Total Hours Imposed: 100     Current Balance: 100

**TREATMENT STATUS:** ☐ N/A     ☐ COMPLETED     ☐ COMPLYING     ☒ NON-COMPLIANT

**Summary of offender's current and prior participation in treatment, educational, and vocational programs:** The offender was enrolled at Addie Rawls inpatient treatment center completing her condition to complete treatment. The

offender was admitted on 12/05/2019. She was unsuccessfully discharged on 2/05/2020 due to noncompliance with program rules and regulations. Staff made multiple intervention into addressing unhealthy behaviors including inappropriate relationships with a male client and having contraband on the ARRC until. The offender failed to comply with clinical staff redirection by having a cell phone and continuing to write graphic letters to specific male client.

(4)     **RECOMMENDATION:** It is the Department's recommendation that the offender's current term of supervision be revoked and the offender be sentenced to a term in a state prison. The offender was given multiple opportunities to correct her behavior before being discharged from Addie Rawls. The offender failed to do so. It is clear the offender does not understand the significance of her treatment of her supervision.

The foregoing is true and correct to the best of my knowledge and belief.

_____                    Approved:            _____
Reginald Christie, Officer                                                          Alex Posta, Supervisor

# EXHIBIT D

Filing # 97846430 E-Filed 10/24/2019 04:58:28 PM

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

STATE OF FLORIDA,

    Plaintiff,             CASE: 2017-CF-3666
                               COURT APPOINTED

v.

DAVID MICHAEL LONG,

    Defendant.

_____/

## DIRECTIONS TO THE CLERK

The Clerk of the above-styled Court is directed to prepare the Automatic Record on Appeal in the above-styled cause pursuant to Florida Rule of Appellate Procedure 9.200(a)(1), including the transcripts specified in the Designation to the Court Reporter.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have furnished a true and correct copy of the foregoing to the Office of the State Attorney, and Office of the Attorney General, 444 Seabreeze Blvd., 5th Floor, Daytona Beach, FL 32118 via email at crimappfab@myfloridalegal.com, today this 24th day of October, 2019.

Keretes Law Firm
P.O. Box 2193
Orlando, FL 32801
Phone: (407) 459-8415
Fax: (407) 536-5799

/s/ Alison Keretes
Alison Keretes
Florida Bar No. 27862
Email: Alison@Keresteslawfirm.com
Steve Keretes
Florida Bar No. 26305
Email: steve@keresteslawfirm.com

---

Filing # 98224755 E-Filed 11/01/2019 09:46:59 AM

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

STATE OF FLORIDA,

    Plaintiff,             CASE: 2017-CF-3666
                               COURT APPOINTED

v.

DAVID MICHAEL LONG,

    Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO WITHDRAW AND FOR APPOINTMENT OF THE PUBLIC DEFENDER

THIS CAUSE came before the court and the Court being fully advised in the premises, it is therefore ORDERED AND ADJUDGED:

1. Defense Attorney Alison Kerestes' Motion to Withdraw is hereby GRANTED. Alison Kerestes and the Kerestes Law Firm PLLC is hereby relieved of further obligation on this case.

2. The Office of the Public Defender is hereby appointed to represent Defendant for the purpose of the appeal.

DONE AND ORDERED at Marion County, Florida, this _31_ day of _____ 2019.

_____
JUDGE ANTHONY TATTI
Circuit Judge

Filing # 101000462 E-Filed 01/02/2020 09:20:22 AM

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
OF THE STATE OF FLORIDA, IN AND FOR MARION COUNTY

STATE OF FLORIDA                           CASE NO. 2017-CF-003526-A-Z

VS.

DAVID MICHAEL LONG

_____/

## SUPPLEMENTAL DISCOVERY EXHIBIT # 27

**COMES NOW** the State of Florida, by and through the undersigned Assistant State
Attorney, and files this supplemental response to Notice of Discovery previously supplied.

### TANGIBLE EVIDENCE

750 - 761 - CERTIFIED JUDGMENT AND SENTENCE AND PLEA
AGREEMENT FOR JESSICA POTTER CASE NUMBERS 2018-CF-4723 AND
2019-CF-1300

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Supplemental Discovery Exhibit has
been furnished by U.S. Mail/Hand Delivery/Electronic Service to:     Alison A Kerestes,
ALISON@KERESTESLAWFIRM.COM, SERVICE@KERESTESLAWFIRM.COM, 4767 New
Broad Street, Orlando, FL 32814 this 27th day of December, 2019.

BRAD KING
STATE ATTORNEY
FIFTH JUDICIAL CIRCUIT

*amy Berndt*

Amy Beth Berndt
Assistant State Attorney
Fla. Bar # 0999393
110 NW 1 AVE, SUITE 5000
OCALA, FL 34475
(352) 671-5800
ESERVICEMARION@sao5.org

M-2017-43898

Filing # 101000227 E-Filed 01/02/2020 09:16:33 AM

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
OF THE STATE OF FLORIDA, IN AND FOR MARION COUNTY

STATE OF FLORIDA                      CASE NO. 2018-CF-001404-A-Z

VS.

DAVID MICHAEL LONG

_____/

### SUPPLEMENTAL DISCOVERY EXHIBIT # 29

**COMES NOW** the State of Florida, by and through the undersigned Assistant State Attorney, and files this supplemental response to Notice of Discovery previously supplied.

### TANGIBLE EVIDENCE

1436 - 1447   CERTIFIED JUDGMENT AND SENTENCE AND PLEA AGREEMENT FOR JESSICA POTTER CASE NUMBERS 2018-CF-4723 AND 2019-CF-1300

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Supplemental Discovery Exhibit has been furnished by U.S. Mail/Hand Delivery/Electronic Service to:   Daniel M Hernandez, DHERNANDEZLAW@AOL.COM, 902 N Armenia Ave, Tampa, FL   33609 this 27th day of December, 2019.

BRAD KING
STATE ATTORNEY
FIFTH JUDICIAL CIRCUIT

Amy Berndt

Amy Beth Berndt
Assistant State Attorney
Fla. Bar # 0999393
110 NW 1 AVE, SUITE 5000
OCALA, FL  34475
(352) 671-5800
ESERVICEMARION@sao5.org

M-2018-06369

DAVID LONG
DC# D-20224
Suwanee Correctional Institution
— Annex
5964 U.S. Hwy 90
Live Oak, FL 32060

SCREENED
By USMS

U.S. District Court House
Office of the Clerk
Federal Building
207 N.W. Second Street
Ocala, FL 34475


Mailed From State
Correctional
Institution
Suwanee C.I.


US POSTAGE PITNEY BOWES

ZIP 32060
02 4W
0000380318 JAN 27 2022
$ 009.10⁰